In the Matter of Gene & Carol GUNTER, Debtors.

ELLIS NATIONAL BANK OF BRADENTON, Plaintiff,

v.

Gene & Carol GUNTER, Defendants.

Bankruptcy No. 80–1525.

United States Bankruptcy Court,
M. D. Florida,
Tampa Division.

June 10, 1981.

Douglas A. Wallace, Bradenton, Fla., for plaintiff.

Michael W. Ross, Bradenton, Fla., for debtors.

## FINDINGS OF FACT, CONCLUSIONS OF LAW AND MEMORANDUM OPINION

ALEXANDER L. PASKAY, Chief Judge.

This is a contested discharge proceeding and the matter under consideration is the dischargeability, vel non, of a debt admittedly due and owing to the Plaintiff, Ellis National Bank of Bradenton (the Bank), by Gene and Carol Gunter, (Debtors), the Defendants involved in the above-captioned adversary proceeding. The complaint seeks a determination that the obligation of the Debtors is a non-dischargeable debt by virtue of § 523(a)(2)(B) in that it was created through the submission of a materially false financial statement in writing, with the intent to induce the Bank to grant a loan, and the Bank did, in fact, in reliance of the financial statement, grant the loan.

The facts which are relevant to the matter under consideration can be summarized as follows:

On February 8, 1980, the Bank financed the purchase of a 1976 Bayliner boat by the Debtors from a Mr. Robert Born. The principal amount financed was $7,885.58. The Debtors also purchased Credit Life insurance in the amount of $443.52, paid $25 for a credit check and a finance charge of $3,400.50. Thus, the total amount of the transaction was $11,827.20 (Pl's Exh. # 4). The Bank retained a security interest in the boat which was duly noted on the certificate of title. (Pl's Exh. # 5).

Prior to making the loan, the Bank had also financed the same boat for the seller, Robert Born. While it is undisputed that Born was not an employee or agent of the Bank, he undertook to make all of the financing arrangements for the Debtors with the Bank. The record is undisputed that prior to the closing of the loan at the Bank, the Debtors never had any direct contact with any of the Bank's officers or employees.

There is no doubt, however, that the Bank obtained at least the minimum amount of information necessary to run a credit check on the Debtors on February 6, 1980. (Pl's Exh. # 3). On February 6 or 7, 1980, Mr. Born informed Mr. Gunter that it would be necessary for him to submit a written financial statement to the Bank, but did not supply Mr. Gunter with one of the Bank's financial statements. Instead, Mr. Gunter obtained a financing statement form from his place of employment. Mr. Gunter filled out the form while at work and he did not consult his wife, whom he recently married, as to her financial affairs, of which he was virtually totally unfamiliar.

On the morning of February 8, 1980, prior to the closing, the Debtors met with Mr. Born. It was decided that Mrs. Gunter should also sign the financial statement. The Court is satisfied, however, that Mrs. Gunter only signed the financial statement at Mr. Born's request and did not review the statement nor was she ever advised of its contents. The Debtors, accompanied by Mr. Born, went to the Bank for the loan closing and met with Mr. Donald E. Pedlow, as Senior Vice-president of the Bank who was in charge of the installment loan department.

The financial statement prepared by Mr. Gunter was available for review by Mr. Pedlow. Although the record is in dispute on this point, the Court is satisfied that Mr. Pedlow gave the statement only a cursory examination.

Although the transaction was originally set up as an assumption of the Born loan by Mr. Gunter, the Bank agreed to grant a new loan requested by Mr. Gunter in both of the Debtors' names. Thus, the loan documents were signed by both Debtors and the transaction was closed.

With respect to the financial statement itself, it is undisputed that certain obligations of the Debtors were omitted in the following amounts:

Mr. Gene Gunter

| | |
|---|---|
| Associates, Inc. | $3,000 |
| Lazarus Dept. Store | 300 |

| | |
|---|---|
| Levitz Furniture Store | 400 |
| Master Charge (Am. Fletcher Nat'l Bank) | 700 |

**Mrs. Carol Gunter**

| | |
|---|---|
| American Fletcher National Bank | $6,200 |
| General Telephone | 62 |
| MEIS | 50 |
| Montgomery Ward | 550 |
| U.S. Dept. HUD | 3,000 |
| Anesthesia Associates | 100 |
| Indiana Bell Telephone | 55 |
| L. S. Ayers & Co. | 75 |
| Indianapolis Power & Light | 50 |
| Union Hospital | 440 |

The claim of non-dischargeability is based on § 523(a)(2) of the Code which provides in pertinent part as follows:

§ 523. *Exceptions to Discharge*

"(a) A discharge under § 727, 1141, or 1328(b) of this title does not discharge an individual debtor from any debt—

(2) for obtaining money, property, services or an extension, renewal, or refinance of credit, by—

(A) false pretenses, a false representation, or actual fraud . . . "

This section of the Code, derived from the pre-Code law, has no specific provisions allocating the burden of proof in a contested discharge proceeding, thus, Bankruptcy Rule 407 is still controlling and applicable. Bankruptcy Rule 407 provides that the plaintiff on a complaint objecting to dischargeability of a particular debt has the burden to establish with the requisite decree of proof, each and every element of its claim. If the evidence presented by the plaintiff is in equilibrium then it has failed to carry its burden.

Thus, in order for the Bank to prevail on its complaint to determine dischargeability, it must establish (1) that the Debtors submitted a false financial statement in writing, (2) that the statement was submitted with the specific intent to defraud, (3) that the Bank *reasonably* relied on the financial statement, and (4) in reliance with the financial statement, parted with money or property.

It is clear from this record that the financial statement submitted by the

Debtors is materially false in many respects including the omissions of several creditors and the amount of Mr. Gunter's monthly income. This Court, however, is satisfied that the Debtors did not submit the financial statement with the requisite intent to deceive as required by the Bankruptcy Code, which is a positive fraud, i. e. a fraud which involved moral turpitude or intentional wrong. *Brown v. Buchanan*, 419 F.Supp. 199 (E.D.Va.1979); *In re Dolnick*, 374 F.Supp. 84, (N.D.Ill.1974); *In re Taylor*, 514 F.2d 1370 (9th Cir. 1975). Furthermore, fraud is never presumed and in order to establish it there must be an especially strong showing. *Neal v. Clark*, 95 U.S. 704, 24 L.Ed. 586 (1887).

With respect to the obligations omitted from the financial statement, the Court is satisfied that Mr. Gunter reasonably believed that his children had paid off the obligations which were for their benefit. The Court is further satisfied that Mrs. Gunter did not originally intend to be a party to the loan and only signed the financial statement at the last moment, unaware of its contents and omissions. Therefore, it is reasonable to assume that the last minute change in plans is the reason that Mrs. Gunter's obligations were omitted from the financial statement. Even assuming but not admitting that Mrs. Gunter fully intended to be a party to the loan from the beginning, the negligent failure of Mr. Gunter to include his wife's obligations or inquire into her financial affairs is not tantamount to an intent to deceive the Bank. Finally, although Mr. Gunter misstated his monthly income by quite a large sum, the Court is satisfied that he was merely relying on representations made to him by persons at his place of employment, and there is no evidence of an intent to deceive.

This Court is satisfied that the Bank did not *reasonably* rely on the financial statement as a pre-condition to granting the loan. First of all, the Bank financed the boat on a fully secured basis and could look to its security rather than the strength of the financial statement. In addition, a financing statement was never requested

by the Bank, but was in fact requested by Mr. Born and submitted to Mr. Born who was neither an employee or agent of the Bank. Finally, the events surrounding the closing lead to a conclusion that the Bank did not meaningfully consider the financial statement and it was never a pre-condition to the granting of the loan to both Debtors.

In light of the foregoing, this Court is satisfied that the Bank has failed to establish each and every element of its prima facie case with the requisite degree of proof and, therefore, judgment shall be for the Defendants.

A separate final judgment will be entered in accordance with the foregoing.