MILES EMPLOYEE FEDERAL CREDIT UNION, Plaintiff,

v.

Joseph S. GRIFFIN, Mildred D. Griffin, Defendants.

In the Matter of Joseph S. GRIFFIN, aka Joseph S. Griffin, Jr., Mildred D. Griffin, Debtors.

Adv. No. 3–81–0438.

Bankruptcy No. 3–81–01266.

United States Bankruptcy Court, S. D. Ohio, W. D.

Aug. 24, 1982.

Anthony Capizzi, Dayton, Ohio, for debtors/defendants.

Barry W. Mancz, Dayton, Ohio, for plaintiff.

Herbert Ernst, Jr., Dayton, Ohio, trustee.

## DECISION AND ORDER

CHARLES A. ANDERSON, Bankruptcy Judge.

### PRELIMINARY PROCEDURE

This matter is before the Court upon Complaint to Determine Dischargeability of Debt and Objection to Discharge filed on 2 July 1981. The Court held a pretrial conference on 1 September 1981, at which the parties submitted a Joint Pretrial Order which the Court approved on 24 September 1981. The Court heard the matter on 5 January 1982, and completed the hearing on 29 January 1982. The parties subsequently submitted legal briefs. The following decision is based upon the parties' briefs, the Pretrial Order, the evidence adduced at the hearing, and the record.

### FINDINGS OF FACT

Debtors filed a Joint Petition in this Court under 11 U.S.C. Chapter 7 on 28 April 1981. Debtors' Schedules list Plaintiff as a creditor in the amount of $16,342.10, secured by a 1979 Lincoln Mark V, hereinafter the Lincoln, which was totalled in an automobile accident on or about 5 April 1981, and which accordingly had a scheduled value of "$0" as of the date of the Petition filing.

Debtors' liability to Plaintiff is evidenced by a promissory note dated 1 January 1979 in the original amount of $21,497.76. The parties have stipulated that the outstanding balance as of the date of Debtors' Petition filing was $15,526.44. Preliminary to entering into the note, Debtors supplied "Personal and Credit Information" on a form endorsed by Debtors. The form had been backdated to 19 December 1978 at Plaintiff's insistence, and the record does not indicate the actual date of endorsement. The application significantly overstated Debtors' assets, (in particular, the amount of their savings account balance and the number of shares of securities), and understated debts, (in particular, the outstanding balance on Debtors' home mortgage). The Court notes, however, that the parties had several prior dealings, and that Debtors had paid all prior debts in full, and had a good credit rating with Plaintiff at the time the subject note was entered into.

It is also undisputed that Debtors defaulted on the note. It appears from the record, however, that Debtors' monthly payments were current until their last payment in May of 1980, when Mr. Griffin lost the job he had held since September of 1970. The Court notes, that Mr. Griffin has remained unemployed except of brief employment in Michigan in early 1981, and in Washington, D.C. in the fall of 1981.

Debtors also breached Covenant Nine of the Security Agreement by allowing insurance on the automobile to lapse. In January 1980, Mr. Griffin was involved in a minor automobile accident. Debtors' insurance company provided coverage for the accident, but subsequently cancelled the policy.

Despite the lapse of insurance, Mr. Griffin continued to use the Lincoln. Employees of Plaintiff contacted Mr. Griffin by telephone on 29 October 1980, at which time Mr. Griffin indicated that he was still unemployed, and had decided to sell the Lincoln to pay off the debt. Mr. Griffin also indicated that he would send one monthly payment and a copy of a newspaper advertisement advertising sale of the Lincoln. Plaintiff's records indicate that neither item was mailed to Plaintiff. On 17 November 1980, Plaintiff therefore initiated efforts to repossess the Lincoln. Between mid-November and January of 1981 Plaintiff was unable to locate the Lincoln at Debtors' home. The record is unclear as to the extensiveness of Plaintiff's "search," though Plaintiff apparently was reasonably diligent and even "staked out" Debtors' home one weekend in January.

During this time period, Plaintiff was in contact with Mrs. Griffin on several occasions. Plaintiff's records indicate that Mrs. Griffin informed Plaintiff that the Debtors were "separated" and that the whereabouts of Mr. Griffin, who was in possession of the Lincoln, were unknown. Mrs. Griffin denied this allegation, and testified that she informed Plaintiff that Mr. Griffin was "on the road" looking for work, and that the parties were unable to maintain regular contact. In late January, Mrs. Griffin informed Plaintiff that Debtors would attempt to resume monthly payments in March. Plaintiff informed Mrs. Griffin that this would be unacceptable, and that there was "no other option but to file suit."

On 20 February 1981, Plaintiff's records indicate that Plaintiff contacted Debtors' former insurance company, and was informed that the insurance company had paid on the prior claim for the January 1980 accident, and verified that the mechanic's lienholder had released the Lincoln to Debtors in November of 1980. The record does not include mention of inquiry by Plaintiff into the status of the insurance on the Lincoln. Plaintiff then contacted its attorney, who filed suit on behalf of Plaintiff on 27 March 1981.

Covenant Fourteen of the Security Agreement provides, "Debtors agree that in the event of default to make the Collateral available to the Credit Union at a place acceptable to the Credit Union." From the record, it appears reasonably certain that Debtors were aware of Plaintiff's decision to repossess the automobile in late 1980, and of later actual attempts to repossess. Plaintiff contends that the passive resistance against Plaintiff's repossession efforts should be deemed constructively to constitute intentional conduct to defraud and delay Plaintiff by concealment of the Lincoln, and that Debtors' discharge should accordingly be denied pursuant to 11 U.S.C. § 727(a)(2)(A). Debtors respond that they never acted with intent to defraud Plaintiff. On their behalf, Debtors presented credible testimony that the Lincoln was routinely kept at Debtors' home without any special precautions, although it is admitted it was used by Mr. Griffin to seek out-of-town employment and that the creditor was at no time kept informed of the exact whereabouts.

Precipitating the instant matter, Mr. Griffin totalled the Lincoln in early April of 1981, and Debtors subsequently filed the instant Petition on 28 April 1981. Because of the lapse in insurance coverage, the accident in essence rendered Plaintiff's claim unsecured. Plaintiff therefore also argues that its unsecured debt should be deemed nondischargeable on the ground that Plaintiff was fraudulently induced into extending credit to Debtors by the false credit information supplied by Debtors in writing. 11 U.S.C. § 523(a)(2)(B). Debtors respond that Plaintiff did not actually rely upon the credit information or, in the alternative, that any reliance on the information was unreasonable. 11 U.S.C. § 523(a)(2)(B)(iii).

## DECISION AND ORDER

### I

The initial question before the Court is whether the debt owed to Plaintiff should be deemed nondischargeable pursuant to 11 U.S.C. § 523(a)(2)(B), and specifically

824

whether Plaintiff has been defrauded by the erroneous "Personal and Credit Information" supplied by Debtors in writing. This issue was raised by Debtors' oral Motion for Directed Verdict proffered at the hearing held on 29 January 1982, at which time the Court sustained the Motion. This subsection constitutes the Court's separate written conclusions of law regarding the Motion, as requested by counsel for Plaintiff at the hearing.

 As indicated, it is the opinion of the Court that the subject debt should be deemed dischargeable despite the allegation of nondischargeability pursuant to 11 U.S.C. § 523(a)(2)(B), which provides:

(B) use of a statement in writing—

(i) that is materially false;

(ii) respecting the debtor's or an insider's financial condition;

(iii) on which the creditor to whom the debtor is liable for obtaining such money, property, services, or credit reasonably relied; and

(iv) that the debtor caused to be made or published with intent to deceive;

In order to establish a *prima facie* case of nondischargeability based upon 11 U.S.C. § 523(a)(2)(B), the requesting party must satisfy the burden of proof to establish each element of the section by clear and convincing evidence. *In re Klein,* 20 B.R. 119 (Bkrtcy. E.D. Pa. 1982); *In re Lowinger,* 19 B.R. 853 (Bkrtcy. S.D. Fla. 1982); *In re Russell,* 18 B.R. 325 (Bkrtcy. E.D. Pa. 1982); *Matter of Isaacs,* 15 B.R. 210 (Bkrtcy. S.D. Ohio 1981). Although it is conceded that the credit information at issue was supplied by Debtors in writing, "respects Debtors' financial condition," and is "materially false," 11 U.S.C. § 523(a)(2)(B)(i) and (ii), it is the opinion of the Court that Plaintiff has not established the elements of "reasonable reliance" or "intent to deceive" as required by 11 U.S.C. § 523(a)(2)(B)(iii) and (iv), and has thereby failed to establish a *prima facie* case for a finding of nondischargeability.

It is the opinion of the Court that Plaintiff did not actually rely upon the "statement in writing" supplied by Debtors. The form appears to have been hastily completed, and Plaintiff was likely aware that Debtors did not have an opportunity to confirm the data supplied and, instead, that much of the information was based upon Debtors' guesswork. Most significantly, it is the opinion of the Court that Plaintiff never established, had the form been completed accurately, that credit would not have been extended. Although the form was "materially false" in that there were significant discrepancies between Debtors' actual situation and their credit situation as reported, the record indicates that Debtors' good credit rating based upon the parties' prior dealings was the key factor in Plaintiff's decision to enter the subject note, and further that Debtors' actual circumstances had not significantly changed since Plaintiff's prior extensions of credit. The facts also indicate that Debtors' substantial income would have enabled prompt payment of the note, as was the case until Mr. Griffin unexpectedly lost the job he had held for nearly ten years. The Court also notes that, in light of the circumstances, the additional fact that security was taken to guarantee repayment of the debt is itself indication that Plaintiff's decision to extend credit was not in reliance upon the credit information. *Matter of Gunter,* 12 B.R. 242 (Bkrtcy. M.D. Fla. 1981). It is the finding of the Court therefore that credit would have been extended regardless whether the credit application had been accurately completed.

It is the further finding of the Court that, in light of the circumstances, any reliance by Plaintiff upon the credit information supplied by Debtors would have been unreasonable. The form upon which Plaintiff alleges reliance was backdated apparently so that the date of the form, chosen arbitrarily by Plaintiff, would predate the note by several weeks. The Court believes that reliance on estimates of past credit information which is subject to fluctuation, such as savings account balances, is wholly unreasonable unless adequate time is given to verify the figures. In the instant case, it appears that rather than supply time for

verification, the form was instead backdated to appear as though such time in fact lapsed. In addition, the errors in credit information were errors in amount and not of omission, and could have easily been discovered by the most cursory of efforts to confirm the data supplied. Instead the Court is of the opinion that the supplying of credit information was merely a perfunctory step in the process of Debtors' credit application, and that credit was extended to Debtors based upon their substantial income, their good credit rating, and the fact that the Lincoln served as collateral for the debt.

In addition, it is the determination of the Court that Plaintiff has not satisfied its burden of proof to establish that Debtors supplied the instant credit information with an intent to deceive. To the contrary, the Court is of the opinion that Debtors supplied the information based upon estimates which they honestly believed to be reasonably accurate, and that the record does not indicate moral turpitude or bad faith in Debtors' actions. *In re Lowinger, supra,* at 855; *In re Russell, supra,* at 327.

## II

The final matter for resolution is whether Debtors' discharge should be denied pursuant to 11 U.S.C. § 727(a)(2)(A), and specifically whether Debtors have acted "with intent to hinder, delay, or defraud" Plaintiff by "concealing" and "destroying" the Lincoln "within one year before the date of the filing of the petition."

Plaintiff essentially argues that Debtors' passive resistance to Plaintiff's efforts to repossess the Lincoln should be deemed to constitute "active resistance" indicating an intent to defraud Plaintiff by concealment of the Lincoln. Plaintiff apparently further contends that intent to "destroy" the Lincoln should be imputed to Debtors because of their continued use of the Lincoln despite the lapse of insurance and attempts of repossession. In essence, Plaintiff is arguing that Debtors' breach of the terms of the security agreement should, without more, give rise to the remedy of denial of

discharge, i.e. that a bankruptcy remedy should substitute for the usual remedies provided in the Uniform Commercial Code.

A "security agreement" is defined tautologously as an "agreement," and is thus impliedly governed by the basic concepts of contract law. O.R.C. § 1309.01(A)(12) [9–105]. In the subject security agreement, Plaintiff "bargained" for a boilerplate "covenant" that Debtors will "make the Collateral available to [Plaintiff] at a place acceptable to [Plaintiff] . . . in the event of default." The record indicates that Debtors have breached this covenant by their resistance to Plaintiff's efforts to repossess the Lincoln. The remedies for breach of a security agreement are specifically defined by state law, O.R.C. § 1309.44 [U.C.C. 9–501], and include the right of repossession if it can be accomplished without a breach of the peace. O.R.C. § 1309.46 [U.C.C. 9–503]. Although the security agreement may by its own terms provide for certain specific remedies not statutorily presumed, O.R.C. § 1309.44(A) and (C) [U.C.C. 9–501], in the event that a peaceful repossession cannot be effected, the Uniform Commercial Code contemplates that the usual remedy be reducing the claim to judgment "by any available judicial procedures." O.R.C. § 1309.-44(A) [U.C.C. 9–501]. The instant security agreement appears to contemplate the usual remedies available under the Uniform Commercial Code. In the case at bar, the record indicates that there is little doubt that Plaintiff would have been entitled to judgment on the underlying note. In fact, the Court further notes that had the matter been post-petition, the failure to maintain insurance would have been automatic grounds for relief from the automatic stay of 11 U.S.C. § 362(a). *Matter of White,* Case no. 3–81–02708, 3–81–0810 (Bkrtcy. S.D. Ohio, February 4, 1982). But again, in this context, the lapse of insurance would have been grounds for relief to pursue state law remedies, and does not itself warrant the invoking of separable bankruptcy remedies for misconduct. *White, supra.*

■ The remedy of 11 U.S.C. § 727 is not intended to augment Article Nine remedies

**826**

for breach of a security agreement. Although a debtor may be found to have breached a covenant such as the instant covenant to make an automobile readily available for repossession, such breach is not *per se* "concealment," as that term is used in 11 U.S.C. § 727(a)(2)(A). Instead, a "concealment" of property constituting grounds for denial of discharge should involve a secreting of assets in the context of the bankruptcy proceeding, e.g. the hiding of assets from the reach of creditors for the purpose of secretly exempting a portion of the estate which would otherwise be payable to creditors through the bankruptcy proceeding.

■ Breach of a contractually-imposed affirmative duty "to make the Collateral available" does not give rise to a finding of nondischargeability, as alleged, if "concealment with intent to defraud" is not demonstrated by evidence *aliunde.* We agree with Defendants argument that there must be proven more than "constructive intent" or "intent based on speculation." All of the extensive citations of authorities by both parties dwell on the words.

■ There is no question from the facts, however, that Defendants did defeat for several months extensive contacts and efforts by Plaintiff to obtain surrender of the vehicle; whether or not they hid or secreted the vehicle has been debated. There is no doubt whatever, however, that there was a demonstrated scheme to avoid either making contract payments or making the vehicle available. There is no doubt, furthermore, that both knew that such attempts to obtain possession were in progress for months. To add insult to injury, such disreputable conduct was not even covered by insurance coverage resulting in total loss of the collateral.

It is this Court's opinion that to engage in fatuous reasoning that "actual intent" must be shown is to ignore and condone the obvious. Such a flagrant violation of contract responsibilities demonstrates, at least, sufficient intent to justify judicial scrutiny. The long time element without payments, the failure to carry insurance, the failure to

make the collateral readily available, and the lack of a reasonable explanation for such callousness establishes all the intent to hinder, delay or defraud that should be required, despite the dearth of reported case precedents on the subject. The casual explanation offered by Defendants (Debtors) is inadequate, even if it had been supported by the evidence, which is problematic. The Debtors were obligated to an active duty either to make regular payments or surrender the collateral. It is folly to believe that there was no design or purpose to hinder or delay the security interest holder, which alone is sufficient intent of concealment or removal. Both Debtors are intelligent, mature, experienced individuals. The nature and extent of their business dealings and unpaid obligations discounts any näiveté in the market place. The rationale should work both directions.

IT IS HEREBY ORDERED, ADJUDGED AND DECREED that Plaintiff's Complaint to Determine Dischargeability of Debt should be DENIED for failure to sustain the factual burden of proof, and granted as to the objection to discharge on the facts.