**In re Abraham L. PRICE, and Sylvia M. Price, Debtors.**

**BELCHER OIL COMPANY, Plaintiff,**

**v.**

**Abraham L. PRICE, Sylvia M. Price, and David C. Struve, Trustee, Defendants.**

**Bankruptcy No. 84–01094–BKC–SMW. Adv. No. 84–0642–BKC–SMW–A.**

United States Bankruptcy Court, S.D. Florida.

April 12, 1985.

Raymond B. Ray, Fort Lauderdale, Fla., for debtors.

Becky S. Schaffer, Miami, Fla., for plaintiff.

Julia B. Rose, Fort Lauderdale, Fla., for trustee.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

SIDNEY M. WEAVER, Bankruptcy Judge.

THIS CAUSE coming to be heard upon a Complaint to Determine Dischargeability of a Debt filed herein and the Court, having heard the testimony and examined the evidence presented; observed the candor and demeanor of the witnesses; considered the arguments of counsel and being otherwise fully advised in the premises, does hereby make the following findings of fact and conclusions of law:

Abraham and Sylvia Price (referred to as "DEBTORS") were minority shareholders and nominal officers of Ajax Petroleum Corporation (referred to as "AJAX"). Harvey Goldenberg (referred to as "GOLDENBERG") and his wife, Nancy Goldenberg, were the principal shareholders and officers in Ajax. Goldenberg managed the day to day operations of Ajax and in an effort to increase the profit margins applied for a line of credit of $125,000.00 a month from the Belcher Oil Company (referred to as "BELCHER"). While the line of credit was being processed, Goldenberg informed the Debtors that personal guarantees would be required from all parties by Belcher. Goldenberg and his wife prepared and furnished financial statements to Belcher. Belcher also received financial statements of the Debtors. However, the financial statements of the Debtors were not prepared for Belcher, but were prepared for Great American Bank. In its determination whether credit should be given to Ajax, Belcher also obtained letters of reference and recommendation from competing oil companies on Goldenberg. Both the Debtors and the Goldenbergs executed personal guarantees of Ajax' debt to Belcher. Belcher decided to give the line of credit to Ajax and product was delivered until March 1983 when payments stopped. Ajax owes Belcher approximately $213,000.00, and Belcher brought suit against the Debtors and the Goldenbergs for payment on their personal guarantees. By their petition in bankruptcy, Debtors now seek a discharge of these debts owed to Belcher.

Belcher objected to the dischargeability of these debts on a number of counts. Belcher based its allegations in Count I on section 727(a)(4), and the evidence adduced at trial clearly failed to support this allegation. Count II of Belcher's complaint was stricken. Count III is Belcher's primary cause of action against Debtors, by which Belcher contends that pursuant to Bankruptcy Code section 523(a)(2)(B) that the aforesaid transactions represented extensions of credit which were induced by Debtors' use of a materially false financial statement. For the reasons more specifically stated hereinafter, the Court finds that Belcher has not proven all of the necessary elements under section 523(a)(2)(B) of the Bankruptcy Code and that the objection to dischargeability should be denied, and the Debtors should be granted a discharge.

The Court finds that the aforesaid transaction represents an "extension, renewal, or refinance of credit" as between these parties. The Court also finds that the statement in writing was false with respect to certain aspects as to the Debtors' financial condition. The Debtors overstated the value of some of the art work owned by them by listing it separately and by also including it in the pension and profits share valuation. The liabilities side of the financial statement was similarly false, having omitted all obligations except the mortgage on Debtors' personal residence and an unexplained lump sum figure for contingent liabilities. However, as the Court noted before, the financial statement allegedly relied on by Belcher was addressed to Great American Bank. This placed Belcher on notice to make inquiry of the Great

American Bank to determine if any obligation was owed to the Bank by the Debtors.

■ "The primary purpose of bankruptcy law is to relieve the debtor from the burden of indebtedness." *Century First Nat'l Bank of Pinellas County v. Holwerda, (Matter of Holwerda),* 29 B.R. 486, 489 (Bankr.M.D.Fla.1983) and *Perez v. Campbell,* 402 U.S. 637, 648, 91 S.Ct. 1704, 1710, 29 L.Ed.2d 233 (1971). It is settled that exceptions to discharge are narrowly construed in favor of debtors and against creditors. *Holwerda,* 29 B.R. at 489 and *Gleason v. Thaw,* 236 U.S. 558, 562, 35 S.Ct. 287, 289, 59 L.Ed. 717 (1915). An objector to discharge must sustain his burden of proof with clear and convincing evidence. *The Bank of Miami v. Lowinger, (In Re Lowinger),* 19 B.R. 853, 855 (Bankr.S.D. Fla.1982); *First and Merchants Nat'l Bank of Radford v. Jones, (In Re Jones),* 3 B.R. 410, 412 (Bankr.W.D.Va.1980).

■ Courts have recognized four situations that show the creditor has not relied on the financial statements submitted: "(1) the creditor knows that the financial information is not accurate; (2) the statement contains obviously inadequate financial information; (3) the creditor's investigation of the statement suggests its falsity or incompleteness; and (4) the creditor fails to verify information on the statement." *Kentucky Bank & Trust Co. v. Duncan, (In Re Duncan),* 35 B.R. 323, 325 (Bankr. W.D.Ky.1983); *W.A.F.B. Fed. Credit v. Furimsky, (In Re Furimsky),* 40 B.R. 350, 355 (Bankr.D.Ariz.1984). In these situations, an exception from discharge is denied since any reliance claimed could not be deemed reasonable. *Id.* Further, "[t]he majority of cases make it clear that the creditor has a duty to make a reasonable effort to check the credit rating of the Debtor and not rely upon just the financial statement." *First Nat'l Bank Dayton, Ohio v. Breen, (Matter of Breen),* 13 B.R. 965, 969 (Bankr.S.D.Ohio 1981); *Albany State Bank v. Stout, (Matter of Stout),* 39 B.R. 438, 441 (Bankr.W.D.Mo.1984).

■ The standard for measuring the reasonableness of creditor's reliance is an objective one. *Barnett Bank of South Florida, N.A. v. Gilman, (In Re Gilman),* 31 B.R. 927, 929 (Bankr.S.D.Fla.1983). "'[R]easonableness' requires that representations must be found to be of such a character that a reasonably prudent person would rely on them. Such a standard fosters a responsible and careful use of solicited financial statements and discourages the 'spurious use' of such statements.'" *National Bank of North America v. Newmark, (Matter of Newmark),* 20 B.R. 842, 862 (Bankr.E.D.N.Y.1982) (quoting *In Re Magnusson,* 14 B.R. 662, 668–69, n. 1 (N.D. N.Y.1981)). Section 523(a)(2)(B)(iii) is clear in its requirement that the creditor rely on the financial statement and that the reliance was reasonable. The legislative history illustrates that the emphasis is on the reasonableness of the reliance. When section 523(a)(2) was enacted, Congress added the word "reasonable" to the language of section 17(a)(2) of the prior Act. *Furimsky,* 40 B.R. at 353 (citing H.R. No. 95–595, Cong. 1st Sess. 364 (1977), *reprinted in* U.S. Code Cong. & Admin. News 1978, p. 5787). The reasonable requirement was added to prevent the recognized abusive practice by "creditors who would induce false financial statements on which they would not rely but would utilize to threaten litigation if the debtor subsequently filed bankruptcy." *Furimsky,* 40 B.R. at 353 and citations therein.

■ The evidence in this case shows that Belcher did not reasonably rely on Debtors' financial statement. The Court finds that Belcher's credit manager had never met the Debtors, had any direct contact with them, or obtained updated financial statements addressed to Belcher. A number of courts addressing the dischargeability of debt under section 523(a)(2)(B) have used lack of direct contact with the Debtor as one of the determinative factors. *Ponderosa, Inc. v. Consin, (In Re Consin),* 38 B.R. 505, 510 (Bankr.E.D.Tenn.1984); *Telco Leasing, Inc. v. Patch, (Matter of Patch),* 24 B.R. 563, 566 (Bankr.D.Md.1982); *First Nat'l Bank in Ft. Myers v. Curry, (Matter*

*of Curry)*, 12 B.R. 421, 424 (Bankr.M.D. Fla.1981); and *Ellis Nat'l Bank of Bradenton v. Gunter, (Matter of Gunter)*, 12 B.R. 242, 243 (Bankr.M.D.Fla.1981).

The credit manager admitted that the Debtors' financial statement was addressed to the Great American Bank, and that no inquiry was made to Great American Bank as to the financial status or condition of the Debtors. Further, Belcher requested updated financial statements from both the Goldenbergs and the Debtors but only received an updated statement from the Goldenbergs. Nevertheless, Belcher extended the line of credit to Ajax. The *Holwerda* case dealt with a similar situation to the facts in this case. *Holwerda*, 29 B.R. at 486. There, as here, the financial statement was prepared for another lender. *Id.* at 487. It was unclear there, as here, how the creditor obtained the statement. *Id.* at 487. There, as here, the creditor did not have any direct contact with the maker of the financial statement. *Id.* at 489. The *Holwerda* court concluded that "[a] prudent lender would have, at the very least, made ... inquiries and would have *required* an up-to-date financial statement especially when the statement was not submitted by the [Debtors]." *Id.* (emphasis supplied). Accordingly, this Court finds that Belcher did not rely on the Debtors' financial statements but on the experience of Goldenberg and favorable recommendations from other creditors of Ajax. Belcher's reliance on the recommendations of others is not sufficient to prevail in an objection to discharge.

In an earlier and separate bankruptcy proceeding (*Belcher Oil v. Goldenberg*, Adv. # 83–0900–A–BKC–JAG (Bankr.S.D. Fla.)), the Goldenbergs sought to discharge their obligation to Belcher and Belcher filed an objection thereto. After a careful review of the evidence, the Court finds the testimony of the credit manager in this proceeding is in direct conflict with the testimony in the Goldenberg objection to discharge proceeding. Accordingly, the Court determines that the credit manager's testimony in this proceeding is incompatible with the Goldenberg proceeding and lacks credibility herein.

Additionally, the Court finds that, after a careful review of Goldenberg's testimony, that his credibility is suspect for many reasons, including the fact that he managed the day to day operations of Ajax and had the only direct contact with Belcher. In the objection to discharge filed by Belcher against the Goldenbergs, the Bankruptcy Court found that the Goldenberg debt to Belcher Oil was nondischargeable based on the use of a false financial statement. A nondischargeable judgment in the approximate amount of $210,000.00 was entered against the Goldenbergs. Thereafter, Belcher settled with the Goldenbergs for $60,000.00 in deferred payments and Goldenbergs appeared at this trial to testify against the Debtors. The Court concludes that Goldenberg's testimony is, at best, suspect.

Finally, assuming *arguendo* that Belcher relied on the Debtors' financial statements, that reliance cannot be construed as reasonable. On its face, it was obvious that the financial statement had been prepared for another institution. Further, it was unclear how Belcher obtained possession of the financial statement. The reasonable inference is that Goldenberg gave it to Belcher since Goldenberg was Ajax' only contact with Belcher and the statement was never updated. Belcher never questioned the accuracy of the financial statement or whether it was prepared by the Debtors. Even customary practice would dictate that updated financial statements should be obtained and inquiry made prior to credit approval. *See Holwerda*, 29 B.R. at 489.

As indicated in *Bank of Waynesboro v. Yeiser, (In Re Yeiser)*, 2 B.R. 98, 101 (Bankr.M.D.Tenn.1979), the " 'creditor cannot assume the position of an ostrich with its head in the sand and ignore facts which were readily available to it....' " *Id.* (quoting *In Re Ducote*, 4 B.C.D. 943, 945 (Bankr.W.D.La.1979)). Under these facts and circumstances the acceptance of a financial statement which was outdated and

prepared for another financial institution can only be construed as unreasonable. Therefore, any arguable reliance would fail to meet the requirements of section 523(a)(2)(B)(iii).

Based on the foregoing, the Court holds that Belcher failed to prove by clear and convincing evidence all of the elements necessary to prevail under section 523(a)(2)(B). Therefore, a final judgment will be entered in accordance with these findings of fact and conclusions of law.