**In re Robert A DAY, d/b/a, R.D. Masonry, Debtor.**

**G.V. MOORE LUMBER CO., INC., d/b/a, Holden Building Supply, Plaintiff,**

v.

**Robert A DAY, d/b/a, R.D. Masonry and Richard Salem, Trustee, Defendants.**

Bankruptcy No. 4–85–00128–G.

Adv. No. 4–85–0082.

United States Bankruptcy Court, D. Massachusetts.

Nov. 7, 1985.

Leo P. McCabe, Holden, Mass., for plaintiff.

Paul G. Kolesnikovas, Weinstein, Bernstein & Burwick, P.C., Worcester, Mass., for defendants.

Richard P. Salem, Leicester, Mass., Office of the U.S. Trustee, Boston, Mass., Trustee.

## MEMORANDUM AND ORDER RE DISCHARGEABILITY OF DEBT

PAUL W. GLENNON, Bankruptcy Judge.

This action was commenced by G.V. Moore Lumber Co., Inc., d/b/a, Holden Building Supply ("Moore Lumber Co.") pursuant to section 523(a)(2)(B) of the Bankruptcy Code[1] to determine the dischargeability of a debt owing from Robert A. Day, d/b/a, R.D. Masonry ("Day" or "Debtor") in the amount of $18,885.44. Moore Lumber Co. contends that Day's debt to it is nondischargeable because Day, in completing an application for credit, indicated he owned his own home when, in fact, he did not.

---

1. Section 523(a) of the Bankruptcy Code provides, in relevant part:

(1) A discharge under section 727, 1141, or 1328(b) of this title does not discharge an individual debtor from any debt—...

(2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—...

(B) use of a statement in writing—

(i) that is materially false;

(ii) respecting the debtor's or an insider's financial condition;

(iii) on which the creditor to whom the debtor is liable for such money, property, services, or credit reasonably relied; and

(iv) that the debtor caused to be made or published with intent to deceive; ...

11 U.S.C. § 523(a)(2)(B).

## FACTS

In or around June, 1984, Day, a mason by trade, was hired to construct a dog kennel on property owned by George P. Fawcett and/or K–9 Inc. on Route 62 in Sterling, Massachusetts. In conjunction with this contract, Day contacted Moore Lumber Co. to discuss obtaining supplies through it. Day had been a customer of Moore Lumber Co. in the past, paying for his supplies in cash or by check. Day discussed payment matters with Andrew Wohlander ("Wohlander"), the branch manager of the Moore Lumber Co. store in Holden, informing him of his receipt of a construction contract loan from the Ware Trust.

On or about July 25, 1984, Day and his foreman Kevin Berube loaded an order on Day's pick-up truck. While the order was being loaded, or shortly thereafter, Day was informed that he had to complete a credit application before leaving the Moore Lumber Co. premises with his supplies.

Day partially completed the credit application provided by Moore Lumber Co. In so doing, he filled in boxes or spaces with the following captions: 1) Proprietorship; 2) Name; 3) Mail Address; 4) Home Phone #; 5) Do you own your own home?; 6) If jointly, W/whom?; 7) Date purchased; 8) Spouse first name; 9) Your occupation; 10) Employer & Address; 11) Bank reference; and 12) Construction loan bank. Day did not complete boxes or spaces with the following captions: 1) Title to property in name of; 2) Previous address if less than 2 yrs; 3) Years occupation; 4) Salary; 5) Business Phone; 6) The type of bank services used with respect to the bank reference (i.e., MC, Checking, Loans, Visa, Savings, Other); 7) Home MTG. Bank; 8) Amt.; 9) Local Credit reference (do not include credit cards or dept. store charge acts.); 10) Are you planning new construction?, if yes, address; and 11) Amt of construction loan.

Day signed the credit application. He also admitted signing his wife's name to the application. The credit application contained two additional notations: 1) "Please open 2500.00 limit Net/per quote" and 2) "Foreman to Sign for Slips 'Kevin S. Berube'."

A statement to the effect that the information submitted was warranted to be "true and complete," and an authorization to the listed trade and bank references to release information upon verbal or written request "relative to open accounts, notes, mortgages, construction loans and average deposit balances pertinent to the granting of credit by the application" were consented to by Day when he affixed his signature to the credit application.

Information supplied by Day admittedly was false in three respects: 1) he was not a home owner; 2) he did not buy a home in 1975; and 3) he did not own a home jointly with his wife. Rather, on the date of the application for credit, the real estate at 2 Vernon Avenue, South Barre, Massachusetts, the mailing address given by Day on the credit application, was owned by Day and Christine M. Monahan, Trustees of the Day Realty Trust of Bolton, under a Declaration of Trust dated March 1, 1974, as described in a deed dated November 24, 1975, and recorded in the Worcester District Registry of Deeds in Book 5847, Page 302.[2]

After Day partially completed the credit application, Wohlander immediately approved it. Subsequently, on or about August 9, 1984, Moore Lumber Co's main office in Ayer, Massachusetts, affirmed the extension of credit to Day. Wohlander testified that he received, reviewed and approved credit applications. The Ayer office merely processed credit applications. Wohlander also testified that in the normal course of reviewing credit applications he made sure lines were filled in and credit applications were signed. He indicated local credit reference were unnecessary in

---

2. Day, in his testimony, indicated his mother Olive E. Day owned the home at 2 Vernon Avenue.

Day's case because of his knowledge of the K-9 job and Ware Trust financing. (Tr. pp. 9–10, p. 12). Thus, Moore Lumber Co. was aware of the loan from Ware Trust before Day even completed the credit application. However, no steps were taken by Moore Lumber Co. to verify other items of information until the account became delinquent. Despite the $2500.00 ceiling noted on the credit application, which Wohlander downplayed as a formality but at one point admitted should not have been exceeded (Tr. p. 13), Day became indebted to Moore Lumber Co. in the unsecured amount of $18,885.44.

## DISCUSSION

The issue before the Court is whether Moore Lumber Co. has met the burden imposed by Section 523(a)(2)(B) of the Bankruptcy Code of proving six elements necessary to support a finding of nondischargeability: "1) a debt for obtaining money, 2) by use of a statement in writing, 3) that is materially false, 4) respecting the debtor's financial condition, 5) on which the creditor reasonably relied, and 6) published by the debtor with intent to deceive." *In re Coughlin*, 27 B.R. 632, 635 (Bankr.D. Mass.1983). *See also In re Valley*, 21 B.R. 674, 679 (Bankr.D.Mass.1982). Because the primary purpose of bankruptcy law is to relieve debtors from the burden of indebtedness and exceptions to discharge are narrowly construed in favor of debtors and against creditors, an objector to discharge must establish these elements with clear and convincing evidence. *In re Price*, 48 B.R. 211, 213 (S.D.Fla.1985); *In re Coughlin*, 27 B.R. at 635; *In re Valley*, 21 B.R. at 680.

It is undisputed that Day incurred a debt through the use of a materially false written statement respecting the Debtor's financial condition. However, Day disputes Moore Lumber Co.'s assertions that it reasonably relied on his credit application and that he completed the credit application with the intent to deceive Moore Lumber Co.

Day testified that he did not intend to deceive Moore Lumber Co. He argued that circumstances surrounding his completion of the credit application warrant findings that 1) he was told by a Moore Lumber Co. employee that completing the application was a mere formality; and 2) he was coerced into completing the credit application because materials he required for the K-9 job were already loaded on his truck when he was asked to complete the application.

The Court rejects Day's arguments. Day admitted that when he signed the credit application he knew his statements relative to his ownership of the South Barre property were not true. "The mere fact that the statement is false and that the debtor knew it was false has been held determinative of an intent to deceive." *In re Mutschler*, 45 B.R. 482, 491 (Bankr.D.N. Dakota 1984). *See, e.g., In re Rodriguez*, 29 B.R. 537, 541 (Bankr.E.D.N.Y.1983); *In re Valley*, 21 B.R. at 680. The Court, therefore, finds that Moore Lumber Co. has established the intent to deceive by clear and convincing evidence.

The difficult issue in this case is whether Moore Lumber Co. reasonably relied on Day's credit application and, if so, whether that reliance was the precipitating cause of its extension of credit to Day. Reliance in section 523 actions involves concepts of reasonableness and proximate cause.

Reliance assumes a degree of causation, without which the credit would never have been extended. Courts have held that the reliance on the financial statement need not be an absolute reliance or a sole factor. It is sufficient for Section 523 that the proof establish that the reliance on the financial statement [or credit application] was the *principal precipitant, the catalyst for the loan,* without which the loan would not have been made.

*In re Mutschuler*, 45 B.R. at 492 (emphasis supplied). Thus, Moore Lumber Co. must show by clear and convincing evidence that the false credit application was a significant factor in its extension of credit to Day,

in the absence of which the extension of credit would not have been made.

Courts have found the proximate cause element of reliance missing "when the evidence indicated that the creditor was relying solely on a previous loan repayment; the debtor's established credit rating; or on the pledged security; or when the false financial information was submitted after the goods or services were provided." *In re Coughlin,* 27 B.R. at 636–37 (citations omitted). However, "actual reliance on the financial statement can be established by merely providing 'evidence demonstrating that the loan would not have been granted if the lender had received accurate information.'" *In re Huffman,* 45 B.R. 590, 595 (Bankr.N.D.Ohio 1984).

Courts have recognized numerous situations that show the creditor has not been reasonable in its reliance on financial statements submitted. These include instances where: " '(1) the creditor knows that the financial information is not accurate; (2) the statement contains obviously inadequate financial information; (3) the creditor's investigation of the statement suggests its falsity or incompleteness; and (4) the creditor fails to verify information on the statement.'" *In re Price,* 48 B.R. 211, 213 (Bankr.S.D.Florida 1985), *quoting In re Furimsky,* 40 B.R. 350, 355 (Bankr.D. Ariz.1984) and *In re Duncan,* 35 B.R. 323, 325 (Bankr.W.D.Ky.1983). *Accord In re Mutschler,* 45 B.R. at 493.

A creditor, however, has no obligation to make an independent check of the applicant's financial condition where the financial statement is neither inaccurate nor incomplete on its face, unless the creditor's normal business practice requires that such checks be made. *In re Mutschler,* 45 B.R. at 493; *In re Vairo,* 40 B.R. 776, 781 (Bankr.S.D.N.Y.1984).

In this regard, the standard for measuring the reasonableness of a creditor's reliance is an objective one. " [R]easonableness requires that representations must be found to be of such a character that a reasonably prudent person would rely on them. Such a standard fosters a responsible and careful use of solicited financial statements and discourages the 'spurious use' of such statements.'" *In re Price,* 48 B.R. at 213 *quoting In the Matter of Newmark,* 20 B.R. 842, 862 (Bankr.E.D.N.Y. 1982) and *In re Magnusson,* 14 B.R. 662, 668–69, n. 1 (Bankr.N.D.N.Y.1981).

With respect to the issue of whether Moore Lumber Co. in fact relied on Day's credit application, evidence suggests that Moore Lumber Co. was relying on previous dealings with Day and prior knowledge of Ware Trust financing, rather than the credit application itself. Furthermore, Day's testimony indicates goods purchased on credit were at least partially loaded on his pick-up before he was asked to complete the credit application. Invoices submitted by Moore Lumber Co. do not contradict this in as much as they show billing, not shipping, dates.

With respect to the issue of whether Moore Lumber Co. reasonably relied on the credit application, Day argues that the reliance was unreasonable. The immediate approval of credit, the woefully incomplete credit application and Moore Lumber Co.'s failure to verify whether Day owned the South Barre home before extending credit to him warrant no other conclusion. The fact that Moore Lumber Co. knew that Day signed his wife's name to the credit application should have induced some form of verification in view of the very limited amount of financial information on the application.

Moore Lumber Co., through the testimony of Wohlander, indicated that, if Day had stated he did not own his own home on the credit application, he would have been required to complete a different application requiring a notice of contract and some form of security on the account. Wohlander did not state that credit would not have been extended to Day. This evidence is insufficient to establish the creditor's reasonable reliance by clear and convincing evidence.

Although the credit application may have been a factor in Moore's decision to extend credit to Day, a debatable proposition at

best, Moore Lumber Co. clearly failed to prove by clear and convincing evidence that it reasonably relied on Day's credit application.[3] The facts that 1) the application was only partially completed and 2) Day obviously signed his wife's name to the application should have caused Moore Lumber Co. to verify from readily available public records the only information on the credit application of which it had no previous knowledge—Day's ownership of the South Barre property. *Cf. In re Price*, 48 B.R. at 213. Absent such verification, Moore Lumber Co. had no way of knowing whether the property was or was not heavily mortgaged.

In view of the foregoing, and, in consideration of the entire record of this proceeding, the Court determines that Day's debt to Moore Lumber Co. in the amount of $18,885.44 is dischargeable.

SO ORDERED.

3. In view of the Court's decision that Moore Lumber Co's reliance on Day's credit application was unreasonable, the Court need not decide that the false credit application was the proximate cause of the extension of credit. Moore Lumber Co. may well have relied on its past dealings with Day and its knowledge of Ware Trust financing because Wohlander permitted Day to at least begin loading his pick-up before completing the credit application and leave with supplies the same day.