In re Thomas S. PICOU, Debtor.

The BANK OF CORAL GABLES, Plaintiff,

v.

Thomas S. PICOU, Defendant.

Bankruptcy No. 87–00588–BKC–SMW. Adv. No. 87–0235–BKC–SMW–A.

United States Bankruptcy Court, S.D. Florida.

Jan. 8, 1988.

Arthur Halsey Rice, Miami, Fla., for debtor.

John T. Longino, P.A., Coral Gables, Fla., for plaintiff.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

SIDNEY M. WEAVER, Bankruptcy Judge.

THIS CAUSE having come before the Court upon a complaint of The Bank of Coral Gables (the Bank) seeking to except from discharge the debtor's debt to the Bank pursuant to 11 U.S.C. § 523(a)(2)(B), and the Court having heard the testimony, examined the evidence presented, observed the candor and demeanor of the witnesses, considered the arguments of counsel and being otherwise fully advised in the premises, does hereby make the following Findings of Fact and Conclusions of Law.

In December, 1984, the debtor, Thomas S. Picou (Picou) borrowed $25,000.00 from the Bank. The loan was unsecured and represented only by a promissory note executed by Picou. Picou submitted two financial statements to the Bank, both of which bear the date, December 18, 1984. One financial statement reflects a net worth of $6,600,000.00 and the other reflects a net worth of approximately $7,500,-000.00. The Court notes that the two statements are on identical forms and that the Bank failed to notice a $1,000,000.00 mistake in the addition on the financial statement that reflects a net worth of approximately $7,500,000.00.

In answer to questions contained on both financial statements, the first page of each financial statement reveals that Picou has no will, no personal bank accounts and reflects that the only note or loan payable by Picou is an unsecured line of credit in the amount of $6,000.00. On the second page of each statement, however, under Schedule "A", there are five separate bank accounts listed, none of which list the name of the owner of the account.

In March, 1985, the Bank made another loan of $100,000.00 to Picou. The Bank requested additional proof of his net worth and in response thereto, Picou submitted an accountant's letter dated March 1, 1985, with an attached financial statement dated December 18, 1984. In the letter, the accountant acknowledged reviewing the attached financial statement. The letter stated that all of the information included in the financial statement was the representation of the individual. The Bank's own testimony was conflicting as to which of the two December 18th financial statements was attached to the accountant's letter.

The loan was approved by the Bank loan committee. The minutes from the loan committee regarding Picou's loan state that:

This loan is recommended for approval based on borrower's net worth of $7,523,-000.00 and his recommendation from our customer Ferris E. Traylor who is planning a low cost housing development with Picou in Atlanta, Georgia with a present development loan commitment outstanding from this Bank for $2,500,-000.00 subject to participation.

The minutes of the loan committee refer to one of the financial statements dated December 18, 1984.

During the course of both loan transactions ($25,000.00 and $100,000.00) the Bank did not verify any of the information contained in the financial statements. The Bank did not obtain income tax returns from Picou to verify his purported annual income of $125,000.00, although the loan officer testified that he relied on Picou's income as the primary basis to approve the loans. Furthermore, no interbank inquiries were made regarding the ownership or activity of the five accounts listed on each of the financial statements, no investigation was made into the unlisted securities which comprised the bulk of the net worth, nor were profit and loss statements requested

from any of the companies. Additionally, the Bank made no inquiry into the value of Picou's real estate, nor did it check the credit history on the one unsecured liability of $6,000.00.

Perhaps more importantly, the Bank loan officer did not meet Picou prior to granting either loan ($25,000.00 and $100,000.00), but rather relied exclusively upon the representations of a third party bank customer, Ferris E. Traylor (Traylor) who was mentioned in the loan committee minutes as one of the reasons the second loan was approved by the committee. The Bank also relied upon Traylor to verify the $6,000,-000.00 value assessed to the unlisted securities on Picou's financial statements. The Bank knew that Traylor, as its customer, was in the construction business and that Traylor had no known experience in the valuation of securities. Subsequent to the Bank's extensions of credit, Picou defaulted on both loans ($25,000.00 and $100,-000.00).

The Bank seeks to except the debt from discharge. Pursuant to 11 U.S.C. § 523(a)(2)(B), the Bank must prove each of the following elements to have Picou's debt excepted from discharge:

1. That Picou's debt exists as a result of obtaining money or credit;

2. That the money or credit was obtained by a financial statement in writing;

3. That the financial statement is materially false concerning Picou's financial condition;

4. That Picou caused the financial statement to be made or published with the intent to deceive the Bank;

5. That the Bank relied on Picou's financial statement in extending money or credit; and,

6. That the Bank's reliance on the financial statement was reasonable.
See In re Duncan, 35 B.R. 323, 324 (Bankr. W.D.Ky.1983).

■ The Bank, as the party seeking the exception to discharge, has the burden of proving each and every element required by the statute. See In re Delano, 50 B.R.

613, 617 (Bankr.D.Mass.1985) citing House-hold Finance Corp. v. Danns, 558 F 2d 114, 116 (2nd Cir.1977). Exceptions to discharge are narrowly construed in favor of the debtor. See In re Price, 48 B.R. 211, 213 (Bankr.S.D.Fla.1985). A party objecting to discharge must sustain the burden of proof with clear and convincing evidence. The Bank of Miami v. Lowinger (In re Lowinger), 19 B.R. 853, 855 (Bankr. S.D.Fla.1982).

The Court finds that Picou's debt exists as a result of obtaining money from the Bank and that there was a material misstatement or omission on Picou's financial statement. Several assets which were listed on the financial statements as being in Picou's name alone were, in fact, jointly owned with his wife. In addition, Picou listed raw land at its higher, developed value rather than at its actual undeveloped value. The Court finds that Picou caused the financial statements to be made with a reckless indifference to the accuracy of the information contained therein. The totality of circumstances is sufficient to infer an intent to deceive on the part of Picou. See United Leasing Corporation v. Roop, 48 B.R. 310, 313, (D.C.E.D.Va.1985). Furthermore, based upon the loan committee minutes, the Court finds that the Bank relied upon the December 18, 1984 financial statement with a net worth in excess of $7,500,-000.00 together with the recommendation of a customer in approving the loan. See In re Barrett, 2 B.R. 296, 302 (Bankr.E.D. Pa.1980).

Although the Bank relied on the financial statement with a net worth in excess of $7,500,000.00, the Court finds that such reliance was unreasonable. This Court has recognized several situations where a creditor's alleged reliance on a financial statement is unreasonable:

1. The creditor knows that the financial statement is not accurate;

2. The statement contains obvious inadequate financial information;

3. The creditor's investigation of the statement suggests its falsity or incompleteness; and,

4. The creditor fails to verify information on the statement.

*See In re Price,* 48 B.R. 211, 213 (Bankr.S. D.Fla.1985).

■ The standard for measuring the reasonableness of a creditor's reliance on a financial statement is an objective one. *Barnett Bank of South Florida, N.A. v. Gilman (In re Gilman),* 31 B.R. 927, 929 (Bankr.S.D.Fla.1983). The objective standard is that of the reasonably prudent person. *In re Price,* 48 B.R. at 213 and cases cited therein.

■ Presenting itself to this Court for the first time is a situation where a creditor's verification of major assets listed on the financial statements consisted primarily of its accepting the representations of an existing customer. Despite the fact that Traylor has no known expertise in valuing securities, the Bank accepted his representations, alone, with respect to the values given to the unlisted securities in excess of $6,000,000.00. The Bank's reliance must be deemed unreasonable where, as here, the unlisted securities comprising a substantial portion of the assets listed on the financial statements were not verified by an accepted business source of appraisal, but were verified instead by the word of another Bank customer with no known expertise in the valuation of unlisted securities.

Additionally, the Bank has a written comprehensive investigation manual to be used in connection with approving loans. The Bank loan officer testified that the manual defines various forms of investigation, including the acquisition of credit reports. In approving Picou's loans, the Bank did not utilize its standard loan approval policy. The Bank's investigation of Picou's finances consisted of two computer generated credit reports containing insignificant information regarding Picou. The Bank loan officer further testified that the Bank's standard policy of interbank inquiries was abandoned because Picou was "well referred" by an existing customer. In addition, although the Bank loan officer anticipated repayment of the loan from Picou's annual income of $125,000.00, he did not request to see Picou's tax return or verify the purported dividends from his stock or income from his real estate holdings.

There were also questionable responses that amounted to "red flags" in both financial statements that, at the minimum, should have caused the Bank to make an inquiry of Picou. *See Matter of Newmark,* 20 B.R. 842 (Bankr.E.D.N.Y.1982); *In re Medow,* 26 B.R. 305 (Bankr.S.D.Fla.1982); *Matter of Patch,* 24 B.R. 563 (Bankr.D.C. Md.1982) and *In re Bridges,* 51 B.R. 85 (Bankr.W.D.Ky.1985). By way of example, but not limitation, the financial statements submitted to the Bank by the debtor request that the borrower list all of his bank accounts. On the first page of the financial statements, Picou negatively responds to having any bank accounts, yet he lists five accounts on the second page of each financial statement and the Bank failed to inquire of Picou or any of the Banks listed as depositories for Picou's funds. Furthermore, each of the financial statements list both marketable and unmarketable securities carrying a value in excess of $6,000,- 000.00, yet the statements only show dividend income of $10,000.00, an annual return of roughly 2%.

The two financial statements of December 18th contain numerous other questionable responses, the most blatant being the $1,000,000.00 discrepancy in Picou's net worth between the two statements. This Court finds that a reasonably prudent person (the Bank) should have made some inquiry, if not of outside sources, at least of Picou before accepting the financial statements and approving the loans.

Based on the foregoing, the Court finds that the debt is dischargeable and 11 U.S.C. § 523(a)(2)(B) is inapplicable. A separate final judgment of even date has been entered in conformity herein.