### In the Matter of Dean EMPORELLI, Debtor.

### FORD MOTOR CREDIT COMPANY, Plaintiff,

v.

### Dean EMPORELLI, Defendant.

Bankruptcy No. 82–4024.
Adv. No. 83–445.

United States Bankruptcy Court, W.D. Pennsylvania.

Nov. 6, 1984.

---

Sanford M. Lampl, Pittsburgh, Pa., for debtor.

Thomas R. Wright, Pittsburgh, Pa., for FMCC.

## MEMORANDUM OPINION

GERALD K. GIBSON, Bankruptcy Judge.

The matter presently before the Court is Debtor's Motion for Reconsideration of Memorandum Opinion and Order dated August 2, 1984 in the above-captioned adversary proceeding commenced by Ford Motor Credit Company, 42 B.R. 814. Therein, the Court determined that the amount of $129,-479. was nondischargeable pursuant to § 523(a)(6) of the Bankruptcy Code as a result of Debtor's sale of motor vehicles out of trust.

For purposes of clarity, the Court will treat the motion at bar as a Motion to Alter or Amend Judgment pursuant to Rule 59(e) of the Federal Rules of Civil Procedure. In its motion, Debtor alleges as follows. The Bankruptcy Court erred in its conclusion that Debtor's failure to remit proceeds under a floor planning agreement constituted willful and malicious injury within the meaning of § 523(a)(6). Debtor further avers that the Bankruptcy Court erred in its conclusion that Debtor intentionally and deliberately intended to injure Ford Motor Credit Company, hereinafter "FMCC". It

is also alleged that the Bankruptcy Court erred in its finding that FMCC did not know that monies were not being remitted to it during the months of July and August of 1979.

At the oral argument on this matter, and upon the request of counsel for the Debtor, the Court agreed to confine its reconsideration to those averments which appear at numbered paragraphs 4 and 5 of the motion. The paragraphs provide as follows:

4. The Bankruptcy Court erred in its conclusion of law that the actions of Lillian Lenza, an employee of Dean Ford, Inc. during the period of July 5 through July 23, 1979 may be imputed to Debtor, since the Debtor was absent from the dealership during this period and did not know of Lenza's actions. The cars, therefore, sold during this period, without payment to FMCC, may not be charged to the Debtor.

5. The Bankruptcy Court erred in its conclusion that Dean Emporelli owes FMCC the sum of $129,479.00 since the Court failed to give Dean Ford, Inc. credit for the property repossessed by FMCC, which totals $137,-000, and consists of tools totalling $40,000, office furniture, a Wang Office Word Processor, customer receivables totalling $20,000, warranty monies from Ford Motor Company, and hold-back monies owed Dean Ford by Ford Motor Company totalling $6,000.

After careful consideration, the Court reenters its findings of fact as set forth in detail in its Memorandum Opinion of August 2, 1984. Therein, the Court found that Debtor, owner and operator of a Ford dealership located in Lodi, New Jersey, left the country in the midst of the dealership's extreme financial crisis. During his absence, certain vehicles were sold out of trust. Upon his return to the dealership, the practice of selling cars subject to FMCC's floor plan without remitting the proceeds therefor to FMCC continued. In its Opinion, the Court determined that with

regard to those vehicles which were sold out of trust by Debtor himself upon his return from Greece, Debtor's actions constitute willful and malicious injury within the meaning of § 523(a)(6) and the debt arising therefrom is nondischargeable. The Court further determined that with regard to three sale out of trust transactions, hereinafter "SOTs" which occurred immediately prior to Debtor's return to the United States, the actual proceeds therefrom were on the premises of the dealership at the time of Debtor's return. Therefore, Debtor's actions with regard to the three July 19 SOTs constitute willful and malicious injury within the meaning of § 523(a)(6) and the debt arising therefrom is therefore nondischargeable.

Finally, the Court determined that with regard to the five vehicles sold out of trust by Debtor's agent during his absence from the dealership, Debtor's actions also constituted willful and malicious injury within the meaning of § 523(a)(6) and the debt arising therefrom is nondischargeable. It is this determination which is in part the subject of Debtor's Motion for Reconsideration at bar.

In its Memorandum Opinion, the Court stated as follows:

While the Court is cognizant that the aforementioned sales occurred during Debtor's absence, it is firmly convinced that given the financial condition of the dealership at the time of his departure in late June, 1979, Debtor had full knowledge that the SOT transactions were inevitable and imminent. Further, upon his return to the dealership, Debtor made no attempt to notify FMCC of the sales out of trust, but rather concealed them until it was no longer possible. The Court is satisfied that the Debtor had knowledge of the SOT transactions which occurred during the July 5–18 period, acquiesced thereto, and ratified Lenza's actions upon his return.

The Court further notes that upon his sudden departure, Debtor instructed his agent to continue business as usual, although he knew that there were insuffi-

cient funds for the payment of operating expenses which became due only a few days thereafter. Debtor had full knowledge that the only source of funds for the payment of daily operating expenses were the proceeds from the sale of vehicles subject to FMCC's floor plan. Debtor also knew that the operation would be terminated immediately if operating obligations were not met. As a final note, Debtor concealed his whereabouts from his agent during his absence from the dealership.

Based upon the foregoing the Court is firmly convinced that Debtor fully intended that his agent use proceeds from .the sale of vehicles for the payment of the dealership's operating expenses. It was Debtor's hope that such a practice would remain undetected until such time as business conditions improved and FMCC could be paid the amounts owed. However, merely because Debtor was physically out of the country when the first SOT transactions occurred does not make his intent any less clear.

Debtor urges the Court to reconsider its determination of nondischargeability with regard to the foregoing, for Debtor lacked the intent required to support a conclusion of willful and malicious injury to property under § 523(a)(6).

■ As the Court stated in its previous Opinion, intentional conversion of another's property without justification or excuse is a willful and malicious injury within the meaning of § 523(a)(6), 3 *Collier on Bankruptcy* 523.16 at 523.120 (15th Ed.1984); and a finding of ill-will or personal malice is unnecessary to support such a determination. *In re Obermeyer* 12 B.R. 26, 27 (Bkrtcy.N.D.Ohio 1981). Sale of collateral by a debtor without payment to the secured creditor therefor constitutes willful and malicious injury, even if the proceeds are used solely for the operating expenses of the company. *In re Scotella* 18 B.R. 975 (Bkrtcy.N.D.Ill.1982).

■ The legislative history defines "willful" as "deliberate and intentional". H.R. No. 95–595, 95th Cong., 1st Sess. (1977)

363; S.R. No. 95–989, 95th Cong., 2nd Sess. (1978) 77–79; U.S. Code Cong. & Admin. News, (1978) p. 5787. For purposes of § 523(a)(6) "malicious" is defined as "wrongful and without just cause or excuse, even in the absence of personal hatred, spite or ill-will." *In re Meyer*, 7 B.R. 932, 3 C.B.C.2d 534 (Bkrtcy.N.D.Ill.1981). Based upon the foregoing, the Court is satisfied that Debtor possessed the intent necessary to support a determination of willful and malicious injury to property within the meaning of § 523(a)(6). Therefore, the Court reaffirms its prior determination that the debt arising from the sale of five vehicles out of trust during the Debtor's absence from the dealership is nondischargeable.

■ The Court now turns to the second argument raised by Debtor in its Motion for Reconsideration of the Memorandum Opinion dated August 2, 1984. Debtor argues that the Bankruptcy Court erred in its conclusion that Dean Emporelli owes FMCC the sum of $129,479 since the Court failed to give Dean Ford, Inc. credit for the property repossessed by FMCC which totals $137,000 and includes tools, receivables and furniture.

The Court returns to the record for resolution of this issue. Upon discovery of the SOT transactions, FMCC immediately terminated the dealership. Thereafter, FMCC liquidated its collateral and commenced an action against Debtor and his spouse in the Superior Court of New Jersey. Count III of the Complaint filed at Docket No. L–26613–79, states as follows:

2. The (Automotive Wholesale Plan) Agreement further provides that if Dean Ford defaults in any of its obligations to Ford Credit, then plaintiff may take immediate possession of all property in which it has a security interest, and dispose of same in accordance with the Agreement. Dean Ford shall be liable for any costs and expenses involved in the repossession and disposition of the property together with reasonable attorneys' fees.

3. As further security for its obligations to Ford Credit, on August 6, 1979, Dean Ford executed and delivered to plaintiff a Security Agreement (a copy of which is annexed hereto as Exhibit "C") wherein Dean Ford granted to plaintiff a security interest in the following types of property owned by Dean Ford located at 224 Rt. 46E. Lodi, New Jersey, or elsewhere:

(a) All furniture, fixtures, machinery, supplied (sic) and other equipment.

(b) All motor vehicles, tractors, trailers, implements, service parts and accessories and other inventory of every kind.

(c) All accounts, contract rights, chattel paper and general intangibles.

4. By virtue of the default of Dean Ford in the terms of Exhibits "A", "B" and "C", and pursuant to the provisions of a Voluntary Surrender (a copy of which is annexed hereto as Exhibit "D"), Ford Credit has taken possession of the collateral in which it has a security interest and has disposed of and is disposing of same in accordance with the agreements between the parties and the applicable law, with the proceeds credited to the account of Dean Ford.

5. There remains due and unpaid from Dean Ford to Ford Credit on account of the repossession and resale of the collateral, representing the balance due on the amount advanced with costs and expenses through December 7, 1979, calculated as follows:

| | |
|---|---|
| (a) losses on collateral disposed of | $27,851.00 |
| (b) estimate of loss on collateral not yet disposed of | 35,000.00 |
| (c) costs and expenses incurred in repossession and resale | 37,949.00 |
| | 100,800.00 |
| (d) credit recoveries (through 12/12/70) | (28,329.99) |
| | 72,470.01 |

6. Demand has been made upon Dean Ford for payment of the amount due Ford Credit, but payment has not been made.

WHEREFORE, Ford Credit demands judgment against Den (sic) Ford, Inc. on Count Three in the sum of $72,470.01, with interest, reasonable attorneys' fees and costs.

In its Answer and Counterclaim, Dean Ford alleges that Plaintiff has failed to credit Defendant Dean Ford with credits and set-offs to which it is justly due. (Seventh Affirmative Defense). Dean Ford also alleges that Plaintiff has not disposed of collateral in a commercially reasonable manner. (Ninth Affirmative Defense).

In its Affidavit in Support of Motion for Summary Judgment, FMCC includes paragraphs 3 and 4 as stated above. FMCC further states as follows:

13. There remains due and owing from Dean Ford to Ford Credit, the following:

| | |
|---|---|
| (a) Interest and flat charges to May 31, 1982 | $108,397.97 |
| (b) Net losses on collateral, including sales out of trust and losses on cars repossessed and resold | $173,807.04 |
| TOTAL | $282,205.01 |

14. Demand has been made on Dean Ford for payment of the amount due to Ford Credit, but payment has not been made.

On July 30, 1982, an order was entered in the Superior Court of New Jersey for Summary Judgment and Dismissal of Counterclaim. It stated as follows:

This matter having been opened to the Court by Lasky and Cohen, attorneys for plaintiff, and the Court having considered the moving papers, and for good cause shown:

IT IS ON 30th day of July, 1982:

ORDERED that judgment be and the same is hereby entered in favor of plaintiff and against the defendants in the sum of $324,535.01, plus costs;

FURTHER ORDERED that the defendants' Counterclaim be and the same is hereby dismissed.

The issue of credit to the Debtor for amounts received by FMCC upon liquidation of the collateral was pled in the original complaint, again included in the affidavit in support of Motion for Summary Judgment and was resolved with the entry

of the order granting summary judgment. Debtor cannot relitigate the matter in this forum.

Based upon the foregoing, the Court reaffirms the findings of fact and conclusions of law which led to the entry of the Judgment of August 2, 1984 attached to the Memorandum Opinion and Order of the same date.

For purposes of clarity, the motion at bar is treated as a Motion to Alter or Amend Judgment under F.R.Civ.Pro. 59(e). Based upon the foregoing, the Motion is denied.

An appropriate order will be entered.