**In re Felix F. SANTORE, Debtor.**

**ARLINGTON FIVE CENTS SAVINGS, Formerly Known As Tanners National Bank In Woburn, Plaintiff,**

**v.**

**Felix F. SANTORE, Defendant.**

**Bankruptcy No. 84–1366–L.**

United States Bankruptcy Court, D. Massachusetts.

July 15, 1985.

Richard J. Levin, Finnegan, Stanzler & Nadeau, Boston, Mass., for plaintiff.

Thomas E. Callahan, Woburn, Mass., for defendant.

## MEMORANDUM AND ORDER RE DISCHARGABILITY OF A DEBT

THOMAS W. LAWLESS, Chief Judge.

Arlington Five Cents Savings Bank ("Bank") has alleged nondischargeability of a debt due and owing on a loan procured by Felix F. Santore, the debtor herein. The claim of nondischargeability is premised on 11 U.S.C. §§ 523(a)(2)(A) and (a)(6). For the reasons that follow, I find that the Bank has failed to prove exception of this debt from discharge.

### FACTS

In January of 1983, the Bank loaned the debtor $3,700. By fall of that year, the debtor had become delinquent in payments. In an effort to collect the note, the Bank met with the debtor on February 10, 1984, where in return for a security interest in a sailboat owned by the debtor, the Bank agreed to roll over the loan in a 90 day Time Note coming due on May 10, 1984.

The debtor informed the Bank that the boat had an outstanding lien of approximately $20,000, leaving equity of about $8,000 to satisfy the Bank's claim of $3,375.79. He told the Bank he was attempting to sell the boat. There is a dispute as to whether the Bank was informed that the boat was a documented vessel, but it appears the Bank did not know because it is undisputed that the Bank failed to perfect its security interest. Save interviewing the debtor, there is no evidence that the Bank investigated the status or value of the boat.

The debtor failed to make payment of the note on May 10, 1984. He then sold the boat, realizing about $2,000 over the outstanding lien. He offered this money to the Bank, but it was refused. The money was spent on other expenses.

On October 24, 1984, the debtor filed its chapter 7 petition. The debtor subsequently filed this objection to discharge.

### DISCUSSION

The Bank has objected to the debtor's discharge on two grounds. First, that the Bank was fraudulently induced to renew the loan and therefore discharge is excepted under Section 523(a)(2)(A). Second, that the debtor's sale of the boat was in violation of the Bank's security agreement and constituted "willful and malicious injury" to the Bank under Section 523(a)(6).

Section 523(a)(2)(A) provides that "[a] discharge ... does not discharge an individual debtor from any debt ... for ... an extension, renewal, or refinancing of credit, to the extent obtained by ... false pretenses, a false representation, or actual fraud ...".

■ The Bank, as the party seeking to except the debt from discharge, has the burden of proving by clear and convincing evidence that: (1) the debtor made false representations; (2) the debtor knew the representations were false; (3) the debtor made the representations with the intention and purpose of deceiving the creditor; (4) the creditor reasonably relied upon the mis-

representations; and (5) the creditor was injured as the proximate result of the representations. *See, e.g., In re David B. Hill,* 44 B.R. 645, 646 (Bankr.D.Mass.1984); *In re Simpson,* 29 B.R. 202, 209 (Bankr.N. D.Iowa *1983).*

■ The Bank must also show that the debt arose from "an extension, renewal, or refinance of credit." Although the debtor received no new money from the Bank at the time of the alleged fraud, he did receive a benefit in the form of a loan renewal. Recent case law indicates that this is a qualifying event under § 523. *In re Eaton,* 41 B.R. 800, 803 (Bankr.E.D.Wisc. 1984) (creditor's acceptance of additional collateral in exchange for continuance of debtor's loans held to be an "extension or enlargement of credit" under § 523(a)(2)(A).)

■ However, the Bank must still establish that all five of the elements of fraud as enumerated above are present. The Bank's claim is that because the debtor failed to mention that the boat was documented, it was induced to forego legal action in February and renew the loan. It was then unable to perfect its security interest and realize on the collateral when it was sold.

Even if this were true, the facts of this case do not establish that the loan renewal was fraudulently acquired. Assuming that the debtor misrepresented that the vessel was not documented, it does not follow that he intended to deceive the Bank or that he was even aware of the legal ramifications involving security interests in documented vessels.

■ For fraud to be present, the deception must be intentional. "Mere reckless or negligent conduct which creates a false impression is insufficent." *In re Richmond,* 29 B.R. 555 (Bankr.Fla.1983). The debtor's alleged failure to inform the Bank of the boat's documented status at most constitutes negligence, and does not establish a basis for declaring the debt involved nondischargeable in the contemplation of bankruptcy law. It is noted that the debt-

or informed the Bank of the outstanding lien on the boat and did not attempt to hide his financial condition, two far more likely areas of misrepresentation if the debtor's intent was to deceive the Bank.

The Bank has also failed to establish that its loss was the proximate result of the alleged misrepresentation. Presumably the Bank's position is that it could have recovered the full amount of the loan in February and therefore the entire renewal amount should be characterized as new money. This is mere speculation, for there is no evidence that the note was collectible in full at any time.

Since the Bank has failed to establish the above two required elements, it is unnecessary to discuss the remaining three. The Bank has failed to meet its burden of establishing an exception to discharge under § 523(a)(2)(A).

The Bank has also objected to discharge under § 523(a)(6), which exempts from discharge a debt for "willful and malicious injury" by the debtor. The Bank claims that the debtor, in violation of their security agreement, sold the boat without its permission or knowledge, and that this unauthorized sale constitutes the requisite willful and malicious injury.

■ Although a debtor's knowing sale of collateral without the consent of or payment to the secured creditor may constitute willful and malicious injury under § 523(a)(6), *In re Emporelli,* 44 B.R. 124, 127 (Bankr.W.D.Pa.1984), the debtor's behavior must be found to be willful and malicious and not merely negligent or inadvertent. *In re Katz,* 20 B.R. 394 (Bankr. Mass.1982). In particular, the sale of property, even in violation of the terms of a security agreement, does not preclude discharge unless the secured party's rights were knowingly disregarded. *In re Ayers,* 25 B.R. 762 (Bankr.D.Tenn.1982). Here, the debtor informed the Bank that the boat was to be sold, advised the Bank of the actual sale and offered the Bank the excess proceeds. This does not suggest willful or malicious conduct. The facts of this case

are insufficient to bar discharge under § 523(a)(6).

The Bank has failed to establish a case under either § 523(a)(2)(A) or § 523(a)(6). Accordingly, the debt here involved may be discharged.