In re Ellen J. HODGES, Debtor.

SEARS, ROEBUCK & CO., Plaintiff,

v.

Ellen J. HODGES, Defendant.

Bankruptcy No. 1–87–01184.
Adv. No. 1–87–0209.

United States Bankruptcy Court,
N.D. California.

Feb. 18, 1988.

Michael C. Fallon, Santa Rosa, Cal., for debtor.

Michael S. McManus, Diepenbrock, Wulff, Plant & Hannegan, Sacramento, Cal., for plaintiff.

MEMORANDUM OF DECISION

ALAN JAROSLOVSKY, Bankruptcy Judge.

On July 23, 1986, and September 20, 1986, debtor and defendant Ellen Hodges purchased tools, a tool chest, and a tool cabinet from plaintiff Sears, charging the purchases on her Sears charge card. The agreement signed by the debtor when she applied for the card provides that Sears retains a security interest in all items purchased until they are paid for. The debtor

gave the items purchased to a third party as a gift, and has not paid for them.*

An investigation into the conduct of Sears and its counsel, Victor Wade, before this Court during 1986 and 1987 reveals a systematic and serious abuse of Sears' superior economic position to bully consumer debtors into reaffirmation. During that time, Sears took the unfounded position that Bankruptcy Rule 7001 conferred upon it the right to sue debtors *on the contract* after the debtor filed a bankruptcy petition so long as the suit was brought in bankruptcy court. This Court scotched the notion in *In re Penney* (Bkrtcy. N.D.Cal.1987) 76 B.R. 160, and awarded the debtor sanctions pursuant to Rule 9011. Sears elected not to pursue an appeal in that case.

This case was commenced after *Penney* and differs in one key way. It alleges that the debtor converted the property by transferring it to a third party, and prays that the debt be therefore declared nondischargeable.

In this case, the debtor has filed a counterclaim against Sears. She alleges that the filing of the action itself violates the automatic stay because it has no basis in law and is part of a continuing course of conduct intended to improperly bully debtors into reaffirmation. Sears now seeks dismissal of the counterclaim; by countermotion, the debtor seeks dismissal of the complaint on the grounds that the transfer of possession of collateral cannot as a matter of law constitute an act which renders a debt nondischargeable.

The debtor's counterclaim is welcomed by the Court but poorly timed. Had such a counterclaim been brought in *Penney* or the numerous cases brought by Sears before *Penney*, the Court would have had no trouble finding a violation of the automatic stay which justified a large damage award. However, the complaint in *Penney* and its predecessors contained not a single iota of merit; each and every allegation could be admitted by the debtor and there would still be no entitlement to any relief. In this case, unlike *Penney*, Sears has alleged a

*conversion* and seeks to have the debt declared nondischargeable. This is a considerable change from the absurd position taken by Sears in *Penney* that it need not allege nondischargeable conduct in order to obtain a judgment.

 Under some situations, the taking of an action in the bankruptcy court by a creditor might be found to be a violation of the automatic stay. However, the Bankruptcy Code must be read as an integrated statute; an action taken in the bankruptcy court can only be found to be a violation of the automatic stay when there is no basis under the Code for the action. 2 Collier on Bankruptcy (15th Ed.) sec. 362.02, p. 362–27. Section 523(c) of the Code specifically calls for creditors to bring nondischargeability actions against the debtor. As a matter of law, then, a nondischargeability action can never violate the automatic stay. This is not to say that the plaintiff is immune from a malicious prosecution action or sanctions under Rule 9011 if its legal position is entirely unjustified. However, such matters can be considered only after the debtor has prevailed on the merits of the complaint against her.

The Court does not agree with the debtor's position that the transfer of possession of property subject to a security interest can never render a debt nondischargeable pursuant to section 523(a)(6). While no high court has ruled on the issue, numerous reported bankruptcy cases have found that such conduct may render a debt nondischargeable. See, e.g., *In re Booth* (Bkrtcy. S.D.Ohio 1983) 65 B.R. 320.

 On the other hand, the law is clear that not every technical conversion of collateral results in a nondischargeable debt, especially when the debtor is an ordinary consumer with limited understanding of the fine print of a charge card agreement. See, e.g., *In re Casselli* (Bkrtcy. C.D.Cal. 1980) 4 B.R. 531; *In re Brubaker* (Bkrtcy. W.D.Va.1986) 57 B.R. 736. The general rule is that even a transfer in violation of a security agreement does not preclude dis-

---

* While she may have made payments to Sears since the purchases, the Sears credit agreement sets up a revolving account under which payments are allocated to the oldest purchase first.

charge of the debt unless the secured party's rights were knowingly disregarded. *In re Santore* (Bkrtcy. D.Mass.1985) 51 B.R. 122, 124.

 It should be noted that the decision of the Court of Appeals in *In re Cecchini* (9th Cir.1986) 780 F.2d 1440, does not stand for the proposition that any disposition of collateral creates a nondischargeable debt. Such a reading would put the decision in direct conflict with the Supreme Court holding in *Davis v. Aetna Acceptance Co.* (1934) 293 U.S. 328, 332, 55 S.Ct. 151, 153, 79 L.Ed. 393 that a willful and malicious injury does not follow as of course from every technical conversion. What *Cecchini* held is that if a conversion is done intentionally, *necessarily produces harm,* and is *without cause or excuse,* the debt may be nondischargeable. 780 F.2d at 1443. Applied to this case, *Cecchini* means that Sears does not need to prove that the debtor had the specific intent to deprive Sears of its rights in the collateral in order to prevail. However, Sears must prove that the giving of the tools as a gift was an intentional violation of the security agreement, necessarily harmed Sears, and was without excuse. If the Court finds that the giving of the tools as a gift was not a violation of the security agreement, did not necessarily harm Sears (i.e. the debtor could still have made the payments) or that Sears expects and encourages charges of gifts, then even under the standards of *Cecchini* the debt is dischargeable.

In this case, it does not appear that the giving of the collateral as a gift was a breach of the security agreement, so Sears' case is certainly weak. However, the Court cannot deal with the case summarily merely because Sears may have a hard time prevailing. It is certainly possible for Sears to prevail; this possibility precludes summary judgment in favor of the debtor.

For the foregoing reasons, the debtor's counterclaim will be dismissed and her motion for summary judgment on the complaint will be denied. Pursuant to Rule 9021, counsel for Sears shall submit a separate form of order in conformance with this decision.