Irwin KWIAT, Plaintiff,

v.

Patrick A. DOUCETTE, Defendant.

Civ. No. 86–2899–Y.

United States District Court, D. Massachusetts.

Nov. 23, 1987.

---

## MEMORANDUM AND ORDER

YOUNG, District Judge.

This action is before the Court on an appeal by Irwin Kwiat ("Kwiat") from a final judgment of the United States Bankruptcy Court for the District of Massachusetts. 28 U.S.C. § 158(a) (Supp.1987). Kwiat, the debtor in the bankruptcy action, appeals the decision of the bankruptcy court granting summary judgment for the appellee, Patrick A. Doucette ("Doucette") and dismissing Kwiat's counterclaim. This case presents a rather convoluted procedural posture that warrants review before this Court addresses the issues' presented.

### I. PROCEDURAL POSTURE

#### A. *State Court Proceedings*

The parties were at one time in the relationship of attorney (Kwiat) and client (Doucette). Kwiat represented Doucette in a tort action pursuant to the contingent fee arrangement.[1] The tort action was settled in the form of a "structured settlement," [2] with $30,000 paid in cash up front and the remainder to be paid in monthly installments.

At the time of the settlement there were liens outstanding against Doucette, incurred as a result of services rendered Doucette after his accident, which was the

---

1. The facts are set forth in greater detail in the decision of the Massachusetts Superior Court, *see Doucette v. Kwiat,* No. 81–446 (Mass.Sup.Ct. Feb. 8, 1983) (Travers, J.).

2. For an excellent introduction to the general subject of structured settlements, see the deci-

sion of Mr. Justice Travers of the Superior Court in *Doucette v. Kwiat,* No. 81–446, slip op. at 1–6 (Mass.Sup.Ct. Feb. 8, 1983). *See also Doucette v. Kwiat,* 392 Mass. 915, 915–16 n. 1, 467 N.E.2d 1374 (1984) (cases cited therein).

subject of the tort suit. Kwiat settled the liens from a portion of the "up front cash" and also, contrary to the contingent fee arrangement, paid himself a fee of $6,317 for his services. *Doucette v. Kwiat*, 392 Mass. 915, 916, 467 N.E.2d 1374 (1984). Doucette challenged the retention of the fee alleging that Kwiat's conduct was in violation of Mass.Gen.Laws ch. 93A, § 2 and ch. 221, § 51.[3] The Justice of the Massachusetts Superior Court who heard the case found for Doucette and awarded him $6,866 with interest at five times the lawful rate under § 51, amounting to $17,-811.80. The judge also found a violation of ch. 93A, § 2 and awarded another $6,866 with interest at the legal rate of $3,522.36. Mass.Gen.Laws ch. 93A, § 9(3). He also granted attorneys' fees and costs of $8,517.49 under ch. 93A, § 9.[4] Kwiat appealed and the Massachusetts Supreme Judicial Court affirmed. *See Doucette*, 392 Mass. 915, 467 N.E.2d 1374 (1984).[5]

### B. *Bankruptcy Court Proceeding*

On July 30, 1985, Kwiat filed a chapter 7 bankruptcy, 11 U.S.C. § 301, listing the state court judgment as a debt. Doucette filed a complaint alleging that the state court judgment "debts" were nondischargeable under 11 U.S.C. § 523(a)(4), (6) (1982). Kwiat answered by filing a counterclaim alleging that the prosecution of the state court action was an abuse of process. The Bankruptcy Court granted summary judgment for Doucette in the amount of $23,771.88 finding that such an amount was nondischargeable under 11 U.S.C. § 523(a)(4).[6] The Bankruptcy Court also granted summary judgment for Doucette on Kwiat's counterclaim for abuse of process. Finally, the Bankruptcy Court de-

nied Doucette's motion for attorneys' fees under Mass.Gen.Laws ch. 93A and ch. 231, § 6F. Kwiat has appealed the decision arguing as error the Bankruptcy Court's application of the doctrine of collateral estoppel to both Doucette's challenge and Kwiat's counterclaim. Doucette has filed a cross-appeal contesting the denial of his request for attorneys' fees.

## II. DISCUSSION

The use of collateral estoppel in bankruptcy proceedings has yet to be definitively decided by the First Circuit Court of Appeals. Thus, the issue warrants some discussion before the Court addresses the specific objections raised by Kwiat.

### A. *Res Judicata, Collateral Estoppel, and Bankruptcy*

The Supreme Court in *Brown v. Felsen*, 442 U.S. 127, 138–39, 99 S.Ct. 2205, 2212–13, 60 L.Ed.2d 767 (1979) held that a bankruptcy court was not foreclosed by res judicata from determining, independent of any prior state court proceedings, the dischargeability of a debtor's debt under federal bankruptcy law. The Supreme Court noted, however, that the issue in *Brown*

> concerns res judicata only, and not the narrower principle of collateral estoppel. Whereas res judicata forecloses all that which might have been litigated previously, collateral estoppel treats as final only those questions actually and necessarily decided in a prior suit.... [W]e need not and therefore do not decide whether a bankruptcy court adjudicating a § [523] question should give collateral-estoppel effect to a prior state judgment.

**3.** Mass.Gen.Laws ch. 221, § 51 provides: "An attorney at law who unreasonably neglects to pay over money collected by him for and in behalf of a client, when demanded by the client, shall forfeit to such client five times the lawful interest of the money from the time of the demand."

**4.** After trial, the Superior Court Justice denied Kwiat's motion for attorneys' fees and costs, which claimed that Doucette's count claiming that Kwiat received too great a fee for the tort

action was filed in bad faith in violation of Mass.Gen. Laws ch. 231, § 6F.

**5.** Subsequently, Doucette was awarded $4000 in legal fees and $826.03 in costs for the appeal.

**6.** The Bankruptcy Court arrived at this figure by allowing $6,866.00 for actual damages and $3,562.36 in interest, $12,000.00 for legal fees, and $1,344.52 in costs. The multiple damages were found to be dischargeable. *See infra* § II D.

*Brown,* 442 U.S. at 139 n. 10, 99 S.Ct. at 2213 n. 10.[7] Not surprisingly, litigants have not remained static. The weight of authority has approved of a bankruptcy court's invocation of collateral estoppel to bar relitigation of issues decided in a prior state suit. *See, e.g., Klingman v. Levinson,* 831 F.2d 1292, 1295 (7th Cir.1987) ("Where a state court determines factual questions using the same standards as the bankruptcy court would use, collateral estoppel should be applied to promote judicial economy by encouraging the parties to present their strongest arguments"); *In re Shuler,* 722 F.2d 1253, 1255–56 (5th Cir. 1984) (noting that the bankruptcy court retains exclusive jurisdiction to determine the ultimate question of dischargeability); *Spilman v. Harley,* 656 F.2d 224, 227–28 (6th Cir.1981); *In re Ross,* 602 F.2d 604, 607 (3d Cir.1979); *cf. In re Rahm,* 641 F.2d 755, 757 (9th Cir.1981), *cert. denied,* 454 U.S. 860, 102 S.Ct. 313, 70 L.Ed.2d 157 (1981) (prior state court judgment has no collateral estoppel effect, but may establish a prima facie case of nondischargeability).

The First Circuit Court of Appeals did not express dissatisfaction, but neither did it adopt the application of the use of collateral estoppel in *Commonwealth of Massachusetts v. Hale,* 618 F.2d 143, 146 (1st Cir.1980) (decided before the decisions of the Fifth, Sixth, and Seventh Circuit Courts of Appeals just cited). Instead, the court limited its review to the narrow circumstances of that case and affirmed the denial of the application of the doctrine where the prior state court judgment was entered by default. *Id.* at 146.

█ Since the decision in *Hale,* bankruptcy courts in this district that have addressed the issue have applied the doctrine of collateral estoppel in nondischargeability actions when the same issues have been

determined in a prior state proceedings. *See, e.g., In Re Nee,* 50 B.R. 268, 272 (Bankr.D.Mass.1985) (judicial economy favors giving preclusive effect); *In Re D'Annolfo,* 54 B.R. 887, 889 (Bankr.D.Mass. 1985) ("principles of collateral estoppel can apply in nondischargeability cases so that issues that have been fully litigated in a prior state proceeding need not be relitigated"). The Bankruptcy Court below adopted the standards set forth by the court in *D'Annolfo* in determining whether preclusive effect may be given. They are as follows:

(1) The issue sought to be precluded must be the same as that in the prior action;

(2) The issue must have been actually litigated;

(3) The issue must have been determined by a valid and final judgment; and

(4) The determination must have been essential to the judgment.

*In re D'Annolfo,* 54 B.R. at 889.

This Court is satisfied that employing these elements is a salutory application of the principles of collateral estoppel to a bankruptcy proceeding. No violence is committed against Congress' intent to rest the exclusive jurisdiction for deciding nondischargeability issues with the bankruptcy courts. Instead, the use of collateral estoppel is merely a tool in helping the bankruptcy courts satisfy their duty in a more expeditious manner without the necessity of redeciding issues previously fully litigated in a proper forum.

### B. *Nondischargeability Proceedings*

Pursuant to 11 U.S.C. § 523(a), debts otherwise dischargeable under 11 U.S.C. § 727 are nondischargeable when an exception is applicable. Doucette objected to the discharge under both §§ 523(a)(4)[8] and

---

7. Although the distinction has been elucidated on myriad occasions, the Court nonetheless notes that the Supreme Court in *Brown* was employing the term res judicata in its narrow sense to mean claim preclusion and not in the more inclusive sense as a collective reference for both types of preclusion: "issue" and "claim" preclusion. *See Migra v. Warren City School District Board of Education,* 465 U.S. 75, 77 n. 1, 104 S.Ct. 892, 894 n. 1, 79 L.Ed.2d 56 (1984);

*Arecibo Radio Corp. v. Puerto Rico,* 825 F.2d 589, 590 n. 1 (1st Cir.1987). This Court follows this approach and employs the term collateral estoppel synonymously with "issue" preclusion.

8. Section 523(a)(4) excepts from discharge any debt "for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny."

(a)(6).[9] The Bankruptcy Court found that the elements for determination of nondischargeability under § 523(a)(4) existed in the state court judgment. Specifically, the Bankruptcy Court found a defalcation while acting in a fiduciary capacity. *In re Kwiat*, 62 B.R. 818, 821 (Bank.D.Mass. 1986). Thus, in considering this exception the Bankruptcy Court had to first determine whether a fiduciary relationship existed, and then whether a defalcation occurred in the course of that fiduciary capacity.

### 1. Fiduciary Capacity

■ Federal bankruptcy law controls who is a fiduciary for purposes of § 523(a)(4). To be a fiduciary for dischargeability purposes, the debtor must be a trustee either under an express or "technical" trust. *Davis v. Aetna Acceptance Co.*, 293 U.S. 328, 333, 55 S.Ct. 151, 153, 79 L.Ed. 393 (1934); 3 *Collier on Bankruptcy* ¶ 523.14 (1987) (see cases cited therein). The trust relationship must exist prior to the act creating the debt. *Davis*, 293 U.S. at 333–34, 55 S.Ct. at 153–54. State law is relevant in determining whether a trust relationship exists. State statutes may create a particular relationship by expressly imposing fiduciary obligations on a party. *In re Johnson*, 691 F.2d 249, 251–52 (6th Cir.1982); *In re Romero*, 535 F.2d 618 (10th Cir.1976); *In re Janikowski*, 60 B.R. 784 (Bankr.N.D.Ill.1986).

### 2. Defalcation

In *Central Hanover Bank & Trust Co. v. Herbst*, 93 F.2d 510, 512 (2d Cir.1937), Judge Hand stated:

All we decide is that when a fiduciary takes money upon a conditional authority which may be invoked and knows at the time it may, he is guilty of a "defalcation" though it may not be a "fraud," or an "embezzlement," or perhaps not even a "misappropriation."

*See In re Johnson*, 691 F.2d at 255 (approving of *Central Hanover* test); *Carey Lumber Co. v. Bell*, 615 F.2d 370, 376 (5th Cir.1980) (extended defalcation to cover innocent defaults). With these principles in mind, the Court now turns to the claims of error in the application of the doctrine of collateral estoppel below.

### C. *Application of Collateral Estoppel Below*

#### 1. Nondischargeability Issue

Turning to the decision below, the Bankruptcy Court held that "[c]learly, an attorney holds a fiduciary capacity to his client, *see Collier*, 15th ed. § 523.14, and cases cited therein, and Disciplinary Rule 9–102 adopted as part of Rule 3:07 by the Supreme Judicial Court." *Kwiat*, 62 B.R. at 821.[10] The Bankruptcy Court then adopted the state court findings for its conclusion on the defalcation issue:

The state trial judge found and the Supreme Judicial Court affirmed, ... that when Doucette signed the settlement agreement, his understanding from discussions with Kwiat was that *all* attorney's fees were being paid by the insurance company under the arrangement outlined in the settlement agreement. Therefore, Kwiat breached his agreement when he took, without the client's permission, an additional fee of $6,866.00 for obtaining the discharge of liens, a normal part of the wrap and settlement

---

**9.** Section 523(a)(6) excepts from discharge any debt "for willful and malicious injury by the debtor to another entity or to the property of another entity."

**10.** Disciplinary Rule 9–102 provides:
(A) All funds of clients paid to a lawyer or law firm, other than advances for costs and expenses, shall be deposited in one or more identifiable bank accounts maintained in the state in which the law office is situated and no funds belonging to the lawyer or law firm shall be deposited therein except as follows:

(1) Funds reasonably sufficient to pay bank charges may be deposited therein,
(2) Funds belonging in part to a client and in part presently or potentially to the lawyer or law firm must be deposited therein, but the portion belonging to the lawyer or law firm may be withdrawn when due unless the right of the lawyer or law firm to receive it is disputed by the client in which event the disputed portion shall not be withdrawn until the dispute is finally resolved.

of the case. This finding of fact by the state courts is sufficient to hold the judgment from the state court nondischargeable under 11 U.S.C. § 523(a)(4). *Kwiat*, 62 B.R. at 821.

■ The Bankruptcy Court's reasoning and conclusion as to the trust relationship are amply supported by the above cited authorities, even more recent case law, *In re Gans*, 75 B.R. 474, 490–91 (Bankr.S.D.N.Y.1987) ("It is axiomatic that the attorney-client relationship is a fiduciary relationship. Where a debtor-attorney is found to have breached the fiduciary duty to the client, any debt arising within the fiduciary relationship may be nondischargeable pursuant to Section 523[a][4]"), and the special relationship created between an attorney and client. *In re Janikowski*, 60 B.R. at 788.[11] Further, the findings of the state courts support the Bankruptcy Court's determination and Kwiat was properly barred from relitigating the matter of his defalcation in the discharge of his fiduciary duties. The Bankruptcy Court, while noting that its decision was reached under § 523(a)(4), supported its rationale by stating that Kwiat's abuse of his fiduciary responsibilities was also made manifest in the portion of Doucette's briefs addressing the claim of nondischargeability under § 523(a)(6). The Bankruptcy Court, after adopting the Supreme Judicial Court's conclusion that the parties understood that all attorney's fees were to be satisfied by the insurance company under the terms of the tort settlement, then went on to state that it had "little doubt that the defendant knew his fee for settling the liens was contrary to the terms of the arrangement with the plaintiff and, therefore, were a breach of his fiduciary duty as attorney under Disci-

plinary Rule 9–102...." Implicit in the Bankruptcy Court's ruminations on § 523(a)(6) is that Kwiat's conduct, as gleaned from the Supreme Judicial Court's opinion, was willful and malicious. *Kwiat*, 62 B.R. at 821 (quoting *Collier on Bankruptcy* § 523.16, at 523–112 (15th ed. 1979) ("conversion of another's property without his knowledge or consent, done intentionally and without justification and excuse, to the other's injury, is a willful and malicious injury"). Certainly, based upon this recitation, it cannot be said that the Bankruptcy Court abdicated its exclusive jurisdiction in deciding the dischargeability issue.

■ Kwiat is not finished yet. Without citing any authority, he argues that the Bankruptcy Court's decision was based on an erroneous "preponderance of the evidence" standard; he contends that a defalcation must be determined by "clear and convincing" evidence. The case law is legion that claims for nondischargeability under § 523(a)(2) and for claims of actual fraud or embezzlement under § 523(a)(4) must be proved by clear and convincing evidence. *See, e.g., In re Hunter*, 780 F.2d 1577, 1579 (11th Cir.1986) (obtaining money by false pretenses under § 523(a)(2)(A) must be proved by clear and convincing evidence); *In re Gans*, 75 B.R. at 483 (same); *In re Taylor*, 58 B.R. 849, 852 (Bankr.E.D.Va.1986) (embezzlement under § 523[a][4] must be proved by clear and convincing evidence). While many are the cases wherein the courts propose generally that nondischargeability proceedings are to be proved by clear and convincing authority, rare is the case that even makes mention of the standard for claims of defalcation.[12] This Court is provided guidance by

---

11. Kwiat's contention that the Disciplinary Rule is inapplicable because it was not argued in state court contradicts his other argument that the Bankruptcy Court did not address the decision afresh. Further, the fact that the Massachusetts Board of Bar Overseers took no action against Kwiat is, contrary to Kwiat's assertions, immaterial to the existence of a fiduciary relationship between Kwiat and Doucette.

12. In a recent slip opinion the United States Bankruptcy Court for the Eastern District of Pennsylvania noted the difference in the stan-

dards of proof between a § 523(a)(2) proceeding and one under § 523(a)(4). "The Plaintiff has not proven fraud pursuant to § 523(a)(2) by clear and convincing evidence, nor has he proven the elements of § 523(a)(4) or (a)(6) by a preponderance of the evidence." *In re Lane*, 76 B.R. 1016 (Bankr.E.D.Pa.1987). More typical is the approach taken by the United States Court of Appeals for the Seventh Circuit in *Klingman v. Levinson*, 831 F.2d 1292 (7th Cir.1987). In *Klingman*, the court held that the bankruptcy court properly used the parties' earlier state court stipulation to collaterally estop the debtor

the sagacious opinion of Judge Hand quoted above. A recent bankruptcy court opinion interpreting the requirements for a § 523(a)(4) defalcation stated the prevailing interpretation of Judge Hand's now familiar language: "Proof of defalcation does not require evidence of any intentional wrong by the debtor. Whereas fraud under the Bankruptcy Code 'refers to positive fraud, involving moral turpitude,' defalcation is broadly defined to include 'the failure of a fiduciary to account for money he received in his fiduciary capacity' regardless of the fact that such failure may have resulted from ignorance or negligence." *In re Gans*, 75 B.R. at 490 (citations omitted) (court nonetheless concluded that plaintiff failed to prove breach of fiduciary duty by clear and convincing evidence).

This Court has serious reservations as to the propriety of applying this elevated standard of proof to a claim under § 523(a)(4).[13] Whereas a more exacting standard is traditionally required for positive fraud involving "moral turpitude" or some willful or intentional conduct, *see generally McCormick on Evidence* § 340 (1984), it is unclear how the increased burden would work in application to this context, where negligent failure to act in a fiduciary capacity may result in defalca-

tion. Here, the Bankruptcy Court estopped Kwiat from relitigating the issue of the fiduciary relationship, although the Bankruptcy Court did consider the matter afresh to some degree and in accordance with the standards for the finding of a fiduciary relationship and a breach thereof under the Bankruptcy Code. Both matters were litigated in state court resulting in a final, valid judgment. In fact, the state court Justice ruled that Kwiat's actions were "willing and knowing violations of section two of c. 93A." *Doucette v. Kwiat*, No. 81–446, slip op. at 22.[14] Such a finding more than comports with the requirement of "negligence" or "innocent default" that courts have held to satisfy § 523(a)(4). While this Court does not suggest that the state court ruled under the "clear and convincing" standard explicitly, its finding of fact was nonetheless sufficient to enable the Bankruptcy Court to rule with "little doubt," 62 B.R. at 822, that Kwiat breached his duty as an attorney by engaging in defalcation within the scope of his fiduciary responsibility. Although this Court believes that the preponderance standard is sufficient for proving a defalcation, it also believes that the Bankruptcy Court's decision, sub silentio, comports with the clear and convincing standard of proof.[15] *Cf. In*

from challenging the nondischargeability of his debt. The court was silent as to the relative standards of proof in the parties' stipulation and then in the bankruptcy court's proceeding.

**13.** "Clear and convincing proof involves a degree of belief greater than the usually imposed burden of proof by a fair preponderance of the evidence, but less than the burden of proof beyond a reasonable doubt imposed in criminal cases." *Stone v. Essex County Newspapers, Inc.*, 367 Mass. 849, 871, 330 N.E.2d 161 (1975). This is a difficult standard to apply since proof by a fair preponderance of the evidence imports a certain mathematic reasoning and proof beyound a reasonable doubt has nothing whatever to do with mathematics. Thus, "[s]uch midway expressions [as 'clear and convincing'] may have some place in emphasizing the care with which the trier of fact should approach the decision of an [important] issue.... But such terms are too vague to serve generally as a practical guide in the trial of cases," *Matter of Mayberry*, 295 Mass. 155, 167, 3 N.E.2d 248 (1936). Indeed, Mr. Justice Quirico, concurring and dissenting in *Essex County Newspapers, Inc.*, 367 Mass. at 874, 330 N.E.2d 161, considered a jury charge

which required a jury to distinguish among "a preponderance" of the evidence, "clear" evidence, "clear and convincing" evidence, and the concept "beyond a reasonable doubt," and concluded:

A juror listening to a judge instructing him to draw such fine distinctions in his levels of belief would likely agree with Mr. Bumble: "If the law supposes that.... the law is a ass, a idiot." Dickens, *Oliver Twist*, ch. 51.

**14.** Section 2 of Mass.Gen. Laws ch. 93A provides in relevant part: "(A) Unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful." Section 9 of ch. 93A allows a court to double or treble the actual damages suffered as a result of a violation of section two where the offending conduct was willful or knowing.

**15.** The Court is reminded, at this juncture, of the oft-quoted aphorism of Justice, then Judge, Cardozo: "The law has outgrown its primitive stage of formalism when the precise word [or words] was the sovereign talisman, and every slip was fatal. It takes a broader view today."

*re Bosselait,* 63 B.R. 452, 458 (Bankr.E.D. Va.1986) ("[I]f this Court can make an independent determination from the record that the debt is nondischargeable by the applicable burden of proof, then the Court may grant summary judgment without a further hearing"); *see In re Thomas,* 729 F.2d 502, 505–06 (7th Cir.1984) (vacating district court opinion upholding nondischargeability of certain debts and stating that "[p]laintiff satisfied its burden of establishing nondischargeability by showing that it paid defendants $17,804.54 to complete the work and that the defalcation by defendants occurred when they used this trust fund for their own purposes"). Accordingly, the Court affirms the Bankruptcy Court on the issue of the nondischargeability of the debt.[16]

### 2. Abuse of Process Counterclaim

█ Kwiat also challenges as error the Bankruptcy Court's use of collateral estoppel to foreclose an evidentiary hearing on his counterclaim for abuse of process. To prevail on a claim for abuse of process "it must appear that the process was used to accomplish some ulterior purpose for which it was not designed or intended, or which was not the legitimate purpose of the particular process employed." *Beecy v. Pucciarelli,* 387 Mass. 589, 595, 441 N.E.2d 1035 (1982) (citations omitted); *see Fishman v. Brooks,* 396 Mass. 643, 652, 487 N.E.2d 1377 (1986) (whether person knew or had reason to know claim was groundless was relevant as tending to show process was used for ulterior purpose). Kwiat argues that Doucette abused process when he filed the state action complaining that Kwiat's contingent fee was too large because Doucette knew that the claim was false. Doucette eventually lost on this count, Count I of his complaint, both in the Superior Court and before the Supreme Judicial Court.

The Bankruptcy Court barred Kwiat from arguing this claim on the ground that it was decided adversely to him by the state courts when they denied his motion for counsel fees under Mass.Gen. Laws ch. 231, § 6F. With respect, this Court disagrees with the application of collateral estoppel to this counterclaim since the issue sought to be precluded does not appear to be the same as that in the prior action.

In state court Kwiat filed a post-trial motion seeking counsel fees under Mass. Gen. Laws ch. 231, § 6F. Section 6F permits the awarding of attorney's fees where "all or substantially all of [a party's] claims ... were wholly *insubstantial, frivolous and not advanced in good faith.*" (emphasis added). Kwiat argued that Count I of Doucette's complaint, upon which Kwiat prevailed, was frivolous and not advanced in good faith. Mr. Justice Travers denied the motion "satisfied that the bringing of this collection of claims was not frivolous or in bad faith. One can, however, understand the defendant's objection to allegations being made which totally failed of any substantiation." *Doucette v. Kwiat,* No. 81–446 (Mass.Sup.Ct. March 24, 1983) (Decisions and Orders on Pending Post-trial Motions). The Supreme Judicial Court upheld the trial court stating that any appeal "from the denial of a motion for reasonable counsel fees ... must be made to a single justice of the Appeals Court." *Doucette v. Kwiat,* 392 Mass. at 919, 467 N.E.2d 1374. Not only is the issue to be precluded not the same, but the state courts' determination as to Count I was not essential to the judgment since the issue was whether "all

---

*Wood v. Lucy, Lady Duff–Gordon,* 222 N.Y. 88, 118 N.E. 214, 214 (1917).

**16.** Contrary to Kwiat's argument, the Bankruptcy Court did not err in finding that the legal fees and costs awarded in the state court judgment were nondischargeable. *See Klingman v. Levinson,* 831 at 1296 ("The district court also correctly decided that the award of attorneys' fees is nondischargeable. 'Ancillary obligations such as attorneys' fees and interest may attach to the primary debt; consequently, their status de-

pends on that of the primary debt.'") (*quoting In re Hunter,* 771 F.2d 1126, 1131 [8th Cir. 1985] ). The Bankruptcy Court's determination to disallow all multiple rates of interest in the state court on the theory that a bankruptcy court should only exempt compensatory portions from discharge appears just and has not prompted any appeal from Doucette. *See In re Suter,* 59 B.R. 944 (Bankr.N.D.Ill.1986) (articulating standard followed by the Bankruptcy Court in *In re Kwiat* ).

or substantially all" of the claims were frivolous. Neither the Superior Court nor the Supreme Judicial Court addressed the issue of abuse of process sufficiently, if at all, so as to satisfy the doctrine of collateral estoppel.

Thus, even assuming that the Bankruptcy Court had the power to render a final judgment on the abuse of counterclaim as a "core" proceeding, discussed below, this Court would vacate that decision on appellate review as an error of law.

There is, however, a more fundamental matter at issue here. This Court is concerned with the jurisdiction of the Bankruptcy Court to address this matter in the first place.

On August 19, 1987, this Court ordered the parties to brief the issue whether the Bankruptcy Court properly exercised jurisdiction over the abuse of process counterclaim; specifically, the Court expressed concern with the propriety of the Bankruptcy Court's actions in light of *Northern Pipeline Construction v. Marathon Pipe Line Co.*, 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982). The parties differ as to whether the Bankruptcy Court exercised its jurisdiction over the claim as a "core" proceeding, 28 U.S.C. § 157(b)(2)(C), or as a non-core, but "related" proceeding under 28 U.S.C. § 157(c)(1). Bankruptcy judges may hear and render final judgments in core proceedings, subject to appellate review in the United States District Courts. 28 U.S.C. §§ 157(b)(1), 158. For the purposes of this action, core proceedings include "counterclaims by the estate against persons filing claims against the estate" and "other proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor or the equity security holder relationship, except personal injury tort or wrongful death claims." 28 U.S.C. §§ 157(b)(2)(C), (O). This Court has serious difficulties with either section forming the basis of the Bankruptcy Court's "core" jurisdiction in this case.

The Court is wary of too expansive a reading of § 157(b)(2)(O), which is really nothing more than a catch-all provision. *In re Castlerock Properties*, 781 F.2d 159, 162 (9th Cir.1986) ("[W]e hold that state law contract claims that do not specifically fall within the categories of core proceedings enumerated in 28 U.S.C. § 157(b)(2)(B)–(N) are related proceedings under § 157(c) even if they arguably fit within the literal wording of the two catch-all provisions, sections § 157(b)(2)(A) and (O). To hold otherwise would allow the bankruptcy court to enter final judgments that this court has held unconstitutional"). The First Circuit Court of Appeals' decision in *In re Arnold Print Works, Inc.*, 815 F.2d 165 (1st Cir.1987) is not to the contrary. In *Arnold Print Works*, the court was concerned with a post-petition debt and not a pre-petition debt as is present here. *Id.* at 168 (construing "core" proceedings broadly, close to or congruent with the constitutional limitations set forth in *Marathon*).

The fact that Kwiat's claim is a counterclaim, and therefore on its face falls within § 157(b)(2)(C), does not end the matter. The Supreme Court, in *Marathon*, even under the more limited reading of that opinion as expressed by the First Circuit in *Arnold Print Works*, held that "Congress may not vest in a non-Article III court the power to adjudicate, render final judgment, and issue binding orders in a traditional contract action arising under state law." *Accord Thomas v. Union Carbide Agricultural Products Co.*, 473 U.S. 568, 105 S.Ct. 3325, 3334–35, 87 L.Ed.2d 409 (1985). The same reasoning would seem to apply to tort claims arising under state law. The question is thus whether the concern over the subject matter jurisdiction of the Bankruptcy Court is obviated simply because the debtor raises the claim as a counterclaim rather than as part of an original proceeding. Certainly, the Article III concerns remain, as well as the fear of jurisdiction by ambush. Consistent with the dictates of constitutional jurisprudence, however, *see Ashwander v. Tennessee Valley Authority*, 297 U.S. 288, 346–48, 56 S.Ct. 466, 482–84, 80 L.Ed. 688 (1936) (Brandeis, J., concurring) (courts should refrain from deciding constitutional issues where other means of deciding the case are available), this Court must leave the resolu-

tion of these issues for another day. *Compare Macon Prestressed Concrete Co. v. Duke,* 46 B.R. 727 (M.D.Ga.1985) (counterclaim that "attacked the enforceability of the creditor's claim" was a core proceeding within bankruptcy court's jurisdiction) with *In re Illinois–California Express, Inc.,* 50 B.R. 232 (Bankr. D. Colo.1985) (breach of contract counterclaim characterized as entirely under state law and therefore not a core proceeding) and *In re Yagow,* 53 B.R. 737 (Bankr.N.D.1985) (expansive reading of permissive counterclaims would completely emasculate the jurisdictional proscriptions of *Marathon* ).[17]

The reason for the Court's restraint is the parties' expressed willingness here to consent to the Bankruptcy Court's exercise of jurisdiction to render binding orders, subject to appellate review by this Court. Pursuant to 28 U.S.C. § 157(c)(2), "[n]otwithstanding the provisions of paragraph (1) of this subsection, the district court, with the consent of all the parties to the proceeding, may refer a proceeding related to a case under title 11 to a bankruptcy judge to hear and determine and to enter appropriate orders and judgments, subject to review under section 158 of this title." *Union Carbide Agricultural Products Co.,* 105 S.Ct. at 3334–35 ("Congress may not vest in a non-Article III court the power to adjudicate ... a traditional contract action arising under state law, *without consent of the litigants,* and subject only to ordinary appellate review.") (emphasis added); *Arnold Print Works,* 815 F.2d at 167 ("In non-core proceedings, *unless the parties consent to the bankruptcy court's jurisdiction,* the bankruptcy judge has the power only to 'submit proposed findings of fact and conclusions of law to the district court'....") (emphasis added).

Accordingly, consistent with the parties expressed consent, the matter of the abuse of process counterclaim will be remanded to the Bankruptcy Court for adjudication on the merits as a core bankruptcy proceeding.[18]

### D. *Doucette's Motion for Attorney's Fees*

Finally, the Bankruptcy Court's decision to deny Doucette attorney's fees under Mass.Gen. Laws ch. 93A is also vacated since that court's underlying judgment on the abuse of process counterclaim, upon which the motion for attorney's fees was based, is vacated as in error. Moreover, the parties here failed to demonstrate any jurisdictional basis for the Bankruptcy Court to hear such a claim. Awards of attorney's fees are circumscribed by the Bankruptcy Code, see 11 U.S.C. §§ 326, 330.

On the basis of the foregoing, the decision of the Bankruptcy Court on the dischargeability claim is AFFIRMED; the Bankruptcy Court's decision on the abuse of process counterclaim is vacated and remanded for further proceedings consistent with this opinion; the Bankruptcy Court's denial of attorney's fees under ch. 93A is also VACATED.

---

**17.** This Court recognizes, of course, that "the fact that a claim in a bankruptcy matter raises issues of state, rather than federal, law does not by itself determine that it is non-core, rather than core." *Arnold Print Works,* 815 F.2d at 169. Rather, "[i]t is the nature of the proceeding—its relation to the basic function of the bankruptcy court—not the state or federal basis for the claim, that makes the difference here." *Id.* Query whether an abuse of process counterclaim addressed to an earlier state court pro-

ceeding has too attenuated a relation to "the basic function of the bankruptcy court" to be deemed a core proceeding.

**18.** This Court expresses no view, save the reservation articulated above, *see supra* note 17, as to the propriety of permissive abstention by the Bankruptcy Court upon remand in this proceeding. See 28 U.S.C. § 1334(c)(1).