In re Paul Nelson KING, Jr., d.b.a.
Paul N. King, Jr., Electrician, and
Leila M. King, Debtors.

SPRINGFIELD INSTITUTION FOR
SAVINGS, Plaintiff,

v.

Paul Nelson KING, Jr., d.b.a. Paul N.
King, Jr., Electrician and Leila M.
King, Defendants.

Bankruptcy No. 88–40018–JFQ.
Civ. A. No. 88–0194–F.

United States District Court,
D. Massachusetts.

Feb. 22, 1989.

William F. McNamara, Pioneer Valley
Legal Clinic, Springfield, Mass., for plaintiff.

Steven Weiss, Cooley, Shrair, Alpert, Labovitz & Dambrov, Springfield, Mass., for
defendants.

MEMORANDUM AND ORDER

FREEDMAN, Chief Judge.

I. INTRODUCTION

Before the Court is appellants Paul and
Leila King's ("the Kings") Appeal From a
Judgment of Nondischargeability of Debt
of the Bankruptcy Court, appellee Springfield Institution for Savings' ("SIS") Memorandum in Support of Cross Appeal, and in
Response to Debtor's Appeal, and appellants' Reply thereto.

There being no dispute as to the facts as found by Bankruptcy Judge Queenan,[1] they are hereby adopted as follows:

1. The Co-debtor, Paul N. King, Jr. (the "Debtor"), was a sole proprietor of an electrical contracting business which he began on a full-time basis in March of 1987, after having previously operated the business part-time for a few years.

2. On or about the last week in July of 1987, the Debtor inquired of the Plaintiff, Springfield Institution for Savings (the "bank"), as to the possibility of a loan. This inquiry was made to Michael Farrell ("Farrell"), a loan officer of the Bank whom the Debtor had met a few months before when renting a vacation home of Farrell's. The Debtor told Farrell that he needed additional capital to order electrical supplies in bulk at a lower price. He also told Farrell that he had credit card bills for personal items which had been incurred as a result of his cash being drained from starting the business. Farrell stated that a loan from the Bank would be at a lower interest rate than the credit card debt carried. That initial discussion concluded with a tentative plan for two loans, one to pay the credit card debt and the second being a line of credit for the business. Farrell gave the Debtor a financial statement to complete, and they arranged to meet again.

3. On August 3, 1987 the Debtor and his wife met with Farrell at Farrell's office. The Debtor brought with him the financial statement which had been completed except for the value of his home and the debt portion. The Debtor said he had a figure on their debt over and above their real estate mortgage, but that he was not sure whether to put this on the line for secured or unsecured debt. Farrell indicated they could put it all on the line for secured debt, because part of the debt was for secured debt on the car. The Debtor and his wife then inserted the figure of $31,000 on the line for secured debt.

4. The Debtor's personal debt, exclusive of business debt, amounted to about $31,-000, broken down roughly as follows: car loan—$18,000; home improvement loan—$5,000; and credit card loans—$8,000.

5. In addition, on August 3, 1987, the Debtor had about $15,000 to $16,000 of business debt incurred for the purchase of electrical supplies and equipment. Most of this debt was over 60 days old. Two of these creditors had brought suit, one having levied execution on the home and the other having attached the home. Neither the Debtor nor his wife informed Farrell of either these business debts or the two lawsuits. This omission was intentional. At the time of the meeting with Farrell, the Debtor had no more than a few hundred dollars of business receivables from which to pay these debts.

6. At the meeting of August 3, 1987, Farrell had a credit report which contained information on the existence of the credit card debt but no information on the existence of the business debt. The report indicated that only two additional supply houses had made credit inquiries.

7. On August 12, 1987, the Debtor and his wife signed two notes, one for $10,-000 upon which $10,000 was immediately advanced and one for a $15,000 line of credit upon which $15,000 was advanced over a period of time.

8. The omission of the $15,000–$16,000 of trade debt from the financial statement is significant in view of the absence of offsetting receivables. Other alleged discrepancies concerning valuation were not significant.

9. In extending this credit the Bank placed substantial reliance on the financial statement in that the statement showed nothing which was contrary to the picture of a small, growing and prosperous electrical contracting business.

10. The representation in the financial statement that the Debtors had $31,000

1. On cross appeal, SIS challenges the weight given the facts by Judge Queenan, who stated that while SIS had satisfied the "preponderance of the evidence" standard, it had not met the "clear and convincing" standard. *See infra.*

of debt (other than their home mortgage) was a representation which was: materially false; respecting the Debtor's financial condition upon which the Bank reasonably relied; and which was made by the Debtor and his wife with intent to deceive.

11. Including interest through to today, the Bank's claim on the $15,000 note is $16,221.15, and on the $10,000 note is $9,914.33. Including attorneys' fees of $4,588 and disbursements of $192.13, the total claim is $30,915.61.

The Court rules that the Bank's burden of proof is to convince by a fair preponderance of the evidence, not clear and convincing evidence. *Kleiner v. Daboul* (*In re Daboul*), 85 B.R. 197 (Bankr. D.Mass.1988); *Stern v. Dubian* (*In re Dubian*), 77 B.R. 332 (Bankr.D.Mass. 1987). The Bank has sustained that burden here. It would not have sustained its burden on the issue of intent had the standard been one of clear and convincing evidence, an extremely difficult standard to achieve in proving intent to deceive.

*In re King*, No. 88–40018–JFQ, slip op. at 1–4 (Bankr.D.Mass. Aug. 10, 1988).

The issues on appeal may be briefly stated as follows: (1) Did the Bankruptcy Judge apply the correct burden of proof? (2) Did SIS succeed in meeting the correct burden of proof? (3) Did the Bankruptcy Judge err by not allowing SIS to amend its complaint on the day of the trial? These issues will be discussed *seriatim*.

## II. DISCUSSION

In the adversarial proceeding in the Bankruptcy Court, SIS sought to have Bankruptcy Judge Queenan declare two of the debtors' debts nondischargeable under 11 U.S.C. § 523(a)(2)(B), which states in relevant part:

(a) A discharge under section 727, 1141, or 1328(b) of this title [11 U.S.C.S. § 727, 1141, or 1328(b)] does not discharge an individual debtor from any debt—

. . . .

(2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained, by—

. . . .

(B) use of a statement in writing—
(i) that is materially false;
(ii) respecting the debtor's or an insider's financial condition;
(iii) on which the creditor to whom the debtor is liable for such money, property, services, or credit reasonably relied; and
(iv) that the debtor caused to be made or published with intent to deceive. . . .

In his opinion, Judge Queenan states that SIS' burden was "to convince by a fair preponderance of the evidence, not clear and convincing evidence." *In re King*, slip op. at 4. In support of his conclusion, Judge Queenan relies on two prior opinions he authored. *Kleiner v. Daboul* (*In re Daboul*), 85 B.R. 197 (Bankr.D.Mass.1988); *Stern v. Dubian* (*In re Dubian*), 77 B.R. 332 (Bankr.D.Mass.1987). Judge Queenan then concluded that SIS had prevailed by a fair preponderance of the evidence, but would not have if he had required clear and convincing evidence. The appellants challenge Judge Queenan's choice of standard.

### A. The Correct Burden of Proof

#### 1. Appellants' Arguments

As the appellants correctly state, this Court is required to conduct a *de novo* review of the law as applied by the trial court. *The Bible Speaks v. Dovydenas*, 81 B.R. 750, 754 (D.Mass.1988). The burden of proof applied by the Bankruptcy Court clearly falls within that category.

The appellants argue that Judge Queenan's decision is flawed because he has disregarded a decision by the United States Bankruptcy Appellate Panel for the First Circuit which is directly on point. *In re Coughlin*, 27 B.R. 632 (Bankr. 1st Cir. 1983).

The appellants also direct this Court's attention to *In re Day*, 54 B.R. 570 (Bankr. D.Mass.1985), in which Bankruptcy Judge Glennon wrote:

Because the primary purpose of bankruptcy law is to relieve debtors from the

burden of indebtedness and exceptions to discharge are narrowly construed in favor of debtors and against creditors, an objector to discharge must establish [the elements of section 523(a)(2)(B) ] with clear and convincing evidence.

*Id.* at 572 (citations omitted).

The Kings suggest that further support for the "clear and convincing" standard is also contained in *In re Toscano*, 23 B.R. 736, 741 (Bankr.D.Mass.1983) and in *In re Valley*, 21 B.R. 674, 680 (Bankr.D.Mass. 1982).

In disputing appellants' position, SIS relies heavily on a split of authority in this district. Specifically, the appellee acknowledges the *Coughlin* ruling ("clear and convincing"), but argues that *Daboul* and *Dubian* ("preponderance") are entitled to equal precedential weight, and that this Court is free to choose the quantum of proof it thinks is most appropriate.

SIS may technically be correct in stating that the *Coughlin* decision is entitled to no more precedential value than a district court decision. Nonetheless, this Court must still be conscious of the fact that a Bankruptcy Appellate Panel is likely better versed in the intricacies of the Bankruptcy Code than a district court such as this which deals in bankruptcy matters on an irregular basis. Upon review of the authorities cited by the parties and in light of its own research, this Court concludes that the "clear and convincing evidence" is required under these circumstances. The Court does so in large part because the cases cited by SIS are either distinguishable from the case at hand or are authority from outside this jurisdiction. Appellee's brief is marked in its failure to identify the relevant case law in this district, the weight of which clearly contradicts the bank's position.

2.  Discussion of Relevant Case Law

SIS begins its argument by suggesting that another district court in this jurisdiction has "expressed substantial doubts about application of the clear and convincing standard...." Appellee's Response at 7, citing *Kwiat v. Doucette*, 81 B.R. 184 (D.Mass.1987) (Young, J.). It is true that Judge Young expounds on the difficulties of applying the clear and convincing standard. *Kwiat*, 81 B.R. at 190 n. 13. However, the distinction between *Kwiat* and the case at hand lies in the fact that *Kwiat* deals almost exclusively with defalcation under section 523(a)(4), a *"negligent* failure to act in a fiduciary capacity." *Id.* at 190 (emphasis added). By contrast, section 523(a)(2) deals with intentional fraud of one kind or another. As Judge Young himself recognized, "a more exacting standard is tradtionally required for positive fraud involving 'moral turpitude' or some willful or intentional conduct...." *Id.* at 190, *citing generally McCormick on Evidence* § 340 (1984).

*Dubian* and *Daboul*, both heavily relied upon by SIS, are likewise unpersuasive, in light of the fact that both decisions are based on events readily distinguishable from the instant case. Creditors of both Dubian and Daboul had secured state court fraud judgments against them, and sought to have the Bankruptcy Court declare the underlying debts nondischargeable. *Dubian*, 85 B.R. at 198; *Daboul*, 77 B.R. at 333. The standard of proof in Massachusetts in all civil cases, including fraud, is a preponderance of the evidence. As a result, Judge Queenan concluded that it would be a waste of judicial resources to require a higher degree of proof in the Bankruptcy Court than already determined sufficient in the state court. Such a requirement would necessitate a second trial at the federal level of the issue of intent, which Judge Queenan describes as "an unnecessary exercise of judicial machinery." *Daboul*, 85 B.R. at 201; *Dubian*, 77 B.R. at 339.

This Court recognizes the importance of efficient allocation of judicial resources. However, not all bankruptcy judges in this district have concluded that requiring a higher level of proof places an unnecessary strain on the federal judiciary. For instance, in *In re D'Annolfo*, 54 B.R. 887 (Bankr.D.Mass.1985), Judge Gabriel specifically denied issue preclusion based on a Massachusetts state court judgment because he concluded that the standard of

proof is higher under section 523(a)(2) than under the state fraud statute. *Id.* at 889. Judge Gabriel wrote that "[t]he overwhelming majority of courts (including this court) requires clear and convincing evidence in nondischargeability proceedings under § 523(a)(2)(A)." *Id.* While noting that some courts have opted for a "preponderance of the evidence" standard, Judge Gabriel stated that a similar section in the form Bankruptcy Act, section 17(a)(2), as well as the legislative history of section 523(a)(2), both require "clear and convincing" evidence. *Id., citing* L. King, 3 *Collier on Bankruptcy,* ¶ 523.09, at 523–24 (15th ed. Sup.1984).

As SIS should recognize, the strength of Judge Queenan's analysis in both *Daboul* and *Dubian* is undercut by the inexplicable failure to reconcile the unequivocal holdings in *Coughlin* or *D'Annolfo* with his view that the correct burden of proof should be a "preponderance of the evidence." [2]

Lastly, the appellee argues that Judge Queenan's "thoughtful analysis" has altered the view of at least one court in this district. Appellee's Brief, at 10. However, the support to be drawn from *In re Jackson,* 89 B.R. 308 (Bankr.D.Mass.1988) is shaky at best. In a case arising under sections 523(a)(2)(A) and (B), Chief Bankruptcy Judge Gabriel stated that the parties did not make an issue of the applicable standard of proof. *Id.* at 313 n. 4. While noting that he "has consistently held that the clear and convincing standard applies[,]" *see D'Annolfo, supra,* Chief Judge Gabriel acknowledged Judge Queenan's opinion in *Daboul* and concluded that "[f]or purposes of this opinion only and in recognition of the fact that '[v]ariations in the wording of the burden of proof ... [may be] ... pure abstractions unsuited to the realities of decisionmaking,' [*Daboul,*] 85 B.R. at 201, the Court will utilize the preponderance of the evidence standard." *Id.* No one should mistake Chief Judge Gabriel's tightly limited decision for a general

statement in favor of the "preponderance of the evidence."

As for the appellee's citations to authority from other jurisdictions, only two need specific comment. Both *Combs v. Richardson,* 838 F.2d 112 (4th Cir.1988) and *In re Watkins,* 89 B.R. 848 (Bankr.D.Wis. 1988) are cases that explicitly arise under section 523(a)(6), and as such are distinguishable for the reasons set forth in this Court's discussion of *Kwiat, supra. Combs* also suffers from the defect that the ruling arose in the context of issue preclusion, similar to that found in *Daboul* and *Dubian.*

The effect of issue preclusion on the Fourth Circuit's decision in *Combs* takes on particular significance in light of the fact that other courts of appeal have consistently chosen the higher standard when not faced with the question of issue preclusion. The Eighth Circuit held that under section 523(a)(2)(A), "[c]reditors bear the burden of proof ... and must prove each element of their claim by clear and convincing evidence." *Matter of Van Horne,* 823 F.2d 1285 (8th Cir.1987). The Sixth Circuit wrote that "[t]he party seeking an exception from discharge under section 523(a)(2) has the burden of proof by clear and convincing evidence." *In re Martin,* 761 F.2d 1163 (6th Cir.1985). It is worth noting that the *Martin* case arose under the same subsection as the instant case, section 523(a)(2)(B). *See also, In re Bogstad,* 779 F.2d 370 (7th Cir.1985) ("The standard of proof is one of 'clear and convincing evidence.'").

Even if this Court were to agree with the appellee that its citations reflect a legitimate split of authority in this district regarding the appropriate burden of proof, it would still opt for the higher standard. Research in this area reveals a number of cases in this district which support the use of the higher standard. *See, e.g., In re Salett,* 53 B.R. 925 (Bankr.D.Mass.1985) ("The plaintiff bears the burden of proving

---

**2.** In fact, Judge Queenan does not even cite *Coughlin.* He does cite but does not discuss *In re Toscano,* 23 B.R. 736 (Bankr.D.Mass.1982), which held that "[f]raud and misrepresentation

within the purview of Section 523(a)(2)(A) must be demonstrated by clear and convincing evidence." *Id.* at 739.

each element by clear and convincing evidence."); *In re Santore*, 51 B.R. 122 (Bankr.D.Mass.1985) ("The Bank, as the party seeking to except the debt from discharge, has the burden of proving by clear and convincing evidence...."); *In re Delano*, 50 B.R. 613 (Bankr.Mass.1985) ("Each element [of section 523(a)(2)(B)] must be shown by clear and convincing evidence."); *In re Mann*, 40 B.R. 496 (Bankr.D.Mass. 1984) (Under section 523(a)(2)(B), "[a] creditor seeking a determination of nondischargeability of a debt has the burden of proving each element by clear and convincing evidence."); *In re Leger*, 34 B.R. 873 (Bankr.D.Mass.1983) ("The plaintiff bears the burden of proving each element by clear and convincing evidence."); *In re Andrews*, 33 B.R. 970 (Bankr.D.Mass.1983) ("The lender has the burden of proving each element of its claim under [section 523(a)(2)(B)] by clear and convincing evidence.").

Based on the weight of authority before it, and lacking any compelling reason to act to the contrary, the Court hereby rules that Judge Queenan applied the incorrect burden of proof, and that SIS should have been required to prove its case by "clear and convincing" evidence.

### B. Did SIS Meet the Correct Burden of Proof?

■ Having determined that the correct burden of proof is "clear and convincing," the Court now looks to see if SIS met that burden.

Judge Queenan ruled that SIS had met its burden of proof by a fair preponderance of the evidence. In a somewhat unusual but helpful step, he also ruled that had he decided that the appropriate burden was "clear and convincing," SIS "would not have sustained its burden on the issue of intent...." *In re King*, slip op. at 4. Judge Queenan's rulings in this regard are findings of fact and, as such, are reviewable under a different standard. Bankruptcy Rule 8013 states in relevant part that: "Findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous."

Foreseeing the possibility that this Court would rule against it, SIS filed a post-trial motion in the Bankruptcy Court stating that it had met the "clear and convincing" standard. Judge Queenan denied the motion, the substance of which is presented to this Court.

In essence, SIS attempts to demonstrate that the facts of this case are similar to those in *Coughlin*, in which it was held that a showing by clear and convincing evidence had been made. Coughlin, who was self-employed, also submitted materially false financial statements and tax returns. As the plaintiff points out, the Bankruptcy Appellate Panel concluded that the creditor had established intent by clear and convincing evidence by showing Coughlin's "reckless indifference to, or reckless disregard of, the accuracy of the information in the financial statement...." *Coughlin*, 27 B.R. at 636.

A quick examination of the specifics of *Coughlin*'s application, however, illustrates the differences between that case and the present one. Coughlin claimed assets of $1.73 million, liabilities of $73,500, net worth of $1.66 million and annual income of $125,000. In actuality, Coughlin's true net worth was $50,000 to $60,000, and his annual income was approximately $11,-500. *Id.* at 634. Despite some confusion as to the source of the figures, it was not unreasonable for the Bankruptcy Court to find that Coughlin's adoption of the vastly erroneous claims was "clear and convincing" evidence of his intent to deceive.

Although incomplete, the application submitted by the Kings was far closer to the truth than Coughlin's. In addition, Judge Queenan received mitigating testimony as to the various omissions. For instance, although the Kings had undisclosed trade debt on the order of $15,000 to $16,000, they each testified that they thought the actual amount was closer to $8,000 to $9,000. They further testified that although they had not disclosed information regarding two lawsuits brought against them, they had set up payment plans with the respective creditors. In looking at all the facts, including the debtors' relative

lack of financial sophistication, Judge Queenan clearly concluded that the proof of intent offered by SIS was not "clear and convincing."

This Court concludes that Judge Queenan's finding that SIS did not meet its burden of proof by "clear and convincing" evidence was not clearly erroneous, and will be upheld.

### C. The Denial of SIS' Motion to Amend the Complaint

 On the day of trial, SIS moved to amend its complaint to include the allegation that the Kings made false representations to the bank beyond those contained on their loan application. Judge Queenan denied the motion and also denied the bank's motion for reconsideration following trial.

SIS claims that it did not become aware that it had a claim under section 523(a)(2)(A) until after depositions of the Kings were taken. The bank also claims that the motion was not untimely in light of the fact that it did not finally receive transcripts of those depositions until just eight days before trial.

SIS also challenges any suggestion that allowing their motion to amend the complaint would have prejudiced the debtors. The evidence needed to support the section 523(a)(2)(A) charge, SIS says, was elicited during direct examination of the Kings, and the Kings' counsel had ample opportunity to challenge the evidence during cross-examination of both the debtors and the bank's loan officer, Michael Farrell.

The Kings argue that the motion to amend the complaint would certainly have prejudiced them, as they prepared their case and conducted discovery on the assumption that the basis for the bank's claim was section 523(a)(2)(B). Moreover, the debtors point out that their depositions were completed nearly a month before trial, and suggest that the bank's counsel did not need copies of the transcripts to determine that a claim might lie under section 523(a)(2)(A).

Judge Queenan had two opportunities to weigh the potential prejudice to debtors against the reasons for SIS' delay in filing its motion, and in both instances, he determined that the balance lay with the debtors. Upon review of the situation, this Court determines that he did not abuse his discretion in denying either motion.

### III. CONCLUSION

For the reasons set forth above, the appellant debtors' Appeal from a Judgment of Nondischargeability of Debt of the Bankruptcy Court is ALLOWED and SIS' Cross Appeal is DENIED.

The Bankruptcy Judge is reversed as to the standard of proof applicable under section 523(a)(2), and affirmed as to his finding that SIS did not meet its burden of proof. Judge Queenan is also affirmed on his denial of SIS' motion to amend its complaint. Accordingly, this case is REMANDED to the Bankruptcy Judge for proceedings not inconsistent with this opinion.

It is So Ordered.